**UNITED STATES of America, Plaintiff,**

v.

**Nicholas MAVROULES, Defendant.**

**Cr. No. 92–10243–T.**

United States District Court,
D. Massachusetts.

Sept. 8, 1992.

A. John Pappalardo, U.S. Atty., Jonathan Chiel, Asst. U.S. Atty., Chief, Public Corruption Div., Boston, Mass., for plaintiff.

Francis X. Bellotti, Tracy Miner, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, Mass., for defendant.

## MEMORANDUM

TAURO, Chief Judge.

This case was assigned to me through the blind, random draw selection process utilized in all cases by this court. That procedure serves two important purposes. First, it prevents judge shopping by any party, thereby enhancing public confidence in the assignment process. Second, it ensures an equitable distribution of the case load among the judges of this court.

Once assigned, a judge has a duty to preside, unless there is a valid reason for recusal and reassignment to another judge.

> ... [D]isqualification is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a *reasonable basis* for doubting the judge's impartiality. Were less required, a judge could abdicate in difficult cases at the mere sound of controversy or a litigant could avoid adverse decisions by alleging the slightest of factual bases for bias.

*In re United States*, 666 F.2d 690, 695 (1st Cir.1981) (emphasis in original). That duty to preside is of particular significance in this moment of the court's history when our active judge vacancy rate is approximately forty percent.

Immediately following Congressman Mavroules' arraignment on August 28, 1992, I convened an open-court conference with counsel for the government and the

---

defendant. My purpose was to acquaint them with associations I have had over the years with persons connected with both sides of the case. (See transcript attached as Appendix A.) These included: 1) three contacts with the defendant, whose congressional district includes my home town of Marblehead; 2) my friendship with defense counsel Francis Bellotti since 1964 when he ran for Governor against former Governor Volpe, for whom I served as Chief Legal Counsel; 3) my friendship with the chief prosecutor, Assistant United States Attorney Jonathan Chiel, since he served as one of my law clerks approximately ten years ago; and 4) my participation with two men named in the indictment, Messieurs Brest and Gouchberg, who were among a group of investors, along with me, in a New Hampshire hotel approximately twenty years ago. I have seen them infrequently since then, but our relationship remains cordial.

At that conference, I told counsel that I did not believe that these facts warranted my recusal, or that they would justify my passing on responsibility for the case to one of my colleagues. But, I also invited counsel to inform me of any other facts I may have forgotten over the years, and also to inform me if they had a contrary view as to whether I should preside, given the totality of the circumstances. I concluded the conference by saying:

> I presume this case is going to be tried. I presume that in all cases. There is going to be a winner, there is going to be a loser. And what I don't want to have happen is that, after the fact, somebody has some second thoughts about relationships or any other concerns as to whether there should or should not have been a recusal. I am not putting you through that now, because I think you ought to have a chance to do just what I suggested, that is to think about it, and give me the benefit of any information that you

have that I don't have, that I may have forgotten over the years.

Appendix A at 64–65.

The United States Attorney, John Pappalardo, responded to my invitation for comment by submitting a letter to me dated September 4, 1992, with copies to defense counsel. (Pappalardo's letter attached as Appendix B.) Among the points made by Mr. Pappalardo in his letter was that the government is not moving for my recusal on either of the traditional grounds for doing so, i.e., actual personal bias or prejudice—or the appearance of bias or prejudice. Rather, he requested that I, as Chief Judge, reassign the case to another judge in the interest of justice.[1]

In support of his request, Mr. Pappalardo stated:

> This case is bound to receive an unusual amount of publicity. It appears that this indictment is the first, in recent memory, in the District of Massachusetts to charge a sitting Congressman with violations of federal law. Whatever the outcome, there will be ample opportunity for criticism and second-guessing of the participants in this litigation. The contacts identified by the court leave the court, and the litigative process, open to questioning (particularly in hindsight) as to whether the playing field was a level one or not, whether or not the identified contacts and relationships amount to a legal basis for recusal. It is precisely this kind of second-guessing that the court is already taking steps to avoid by bringing this issue to a head at the earliest possible time. If there are other judges on this court who do not have the kind of contacts identified here, as a pragmatic matter, this court and the litigants can avoid creation of even a shadow of a doubt as to the fairness and rectitude of this process by reassigning this case now.

Appendix B at 66–67 (footnote omitted).

Mr. Pappalardo's request does not fit neatly into any of the traditional theories

---

1. Defendant's response agrees with Mr. Pappalardo's letter insofar as it states that there is no basis for recusal on grounds of either actual or apparent bias. Defendant does not believe, however, that the interests of justice require recusal here. (Defendant's letter attached as Appendix C.)

requiring or warranting recusal. Indeed, no one of the circumstances cited by me at the August 28 conference requires recusal. My contacts with the defendant were minimal, but cordial. Judges often have friendly relationships with lawyers who appear before them. Here, that attitude extends to both defense counsel and the prosecutor. There is no bar to former law clerks appearing before their judge with respect to a matter that was not in chambers during the clerkship. The fact that a judge may know a witness is not, in and of itself, grounds for recusal.

But, given the extraordinary coincidences that produced the unique totality of circumstances involved here, I feel that Mr. Pappalardo's pragmatic analysis makes sense and should be adopted by me. I am, therefore, instructing the Clerk to have the case redrawn.[2]

APPENDIX A.

United States District Court

District of Massachusetts

United States of America

vs.

Nicholas Mavroules

CR # 92–10243–T

Conference Hearing Before Honorable
Joseph L. Tauro, Chief United
States District Judge

APPEARANCES:

Jonathan Chiel, Esquire and Richard Savignano, Esquire

Assistant United States Attorneys

John W. McCormack Post Office, Courthouse

Boston, Massachusetts 02109

For the United States of America

Francis X. Bellotti, Esquire

Tracey Miner, Attorney–at–Law

COURT REPORTER:

Alan R. Mezzetti, Official Court Reporter

1203 John W. McCormack Post Office, Courthouse

Boston, Massachusetts 02109

(617) 482–6188

Friday, August 28, 1992
2:00 p.m.
Boston, Massachusetts

PROCEEDINGS

THE CLERK: United States of America versus Nicholas Mavroules. Criminal Number 92–10243–T.

THE COURT: Good afternoon. Would all identify yourselves for the record.

MR. CHIEL: On behalf of the United States, Richard Savignano, and I am Jonathan Chiel.

MR. BELLOTTI: On behalf of the defendant, Francis X. Bellotti, and this is Tracey Miner.

THE COURT: I know you have been busy this morning, and I am sure you have other things to do today. But, I wanted to put a couple of things on the record.

I presume that you understand that I have drawn this case, and that I am going to be presiding over it. I tell you at the outset something you know, and that is that a Federal District Judge has a duty to preside over the case, unless there is a reason for him or her to recuse himself or herself. I am going to put some matters on the record, and then tell you what I think at the end of it.

I have read the indictment, and I want you to know—Let me back up by saying you people, you lawyers here, certainly understand that it is not uncommon for a Judge to know people who are involved in a case, whether it be as witnesses or parties. In this particular case, I know two of the people that are mentioned in the indictment

---

**2.** Mr. Pappalardo suggested that, as Chief Judge, I "survey the other district judges to determine whether there are any district judges who either have none of the kinds of contacts articulated by the court here, or who have such minor contacts as to render that judge and the litiga-

tive process unassailable." Appendix B at 67. While that approach is reasonable on its face, it would be inconsistent with the spirit and purpose of our blind, random draw system, to which I have already referred.

whom I presume are going to be witnesses, and that is Mr. Bob Brest and Mr. Gerald Gouchberg. Both of them live in Swampscott, which is the next town to Marblehead, which is a small community.

More than that, I had a business relationship with Mr. Brest and Mr. Gouchberg about 20 years ago, an unhappy one for all of us in that we bought a hotel up in New Hampshire, and I am ashamed to tell you how much money we all lost on that deal. But, anyway, that was 20 years ago, and the relationship was a cordial one despite the loss of money. I have not seen either one of them with any frequency since then.

Mr. Ralph Kaplan, I don't have a memory of meeting him. His name is a familiar one to me. I don't think I have met him. I may have.

Mr. Bellotti I have known since 1964. We met under adverse circumstances, I being Chief Legal Counsel to Governor Volpe. Governor Volpe was running against Mr. Bellotti. Since then, for my part I think that Mr. Bellotti and I have had an excellent relationship, very friendly one. I have been to dinner at his home, and he came to my wedding.

Mr. Chiel, the prosecutor, I have also had a close relationship with. He was a law clerk for me, an outstanding one. I liked him very much then, and I like him very much now.

As far as Mr. Mavroules, Congressman Mavroules, I have had a very limited association with him. My memory is that I only met him, met him personally, been in his company, on two occasions, once when there was an effort to establish some sort of a retirement program for Federal Judges. We were urged to contact our Congressman.

I went in to see him about that. That was several years ago. He was very, very cordial. We had a very nice conversation. I am not even sure whether the legislation was filed. I know it was never passed. That was the reason for our meeting.

On another occasion two or three years ago, around Christmas time, I happened to be walking by his storefront office in Salem, which is the next town over from Marblehead. I wished him a Merry Christmas and had a cordial conversation with him. I have had dealings with him on one other occasion that I can recall that is that he personally in his official capacity requested that a naturalization ceremony be set up for some constituents of his in the Gloucester area; not an uncommon request, that a special naturalization ceremony be set up. As it turns out, the ceremony has never taken place, because the particular people have yet to be approved by the Immigration and Naturalization Service.

Now, that is the extent of my involvement with anybody whom I know from reading the indictment to be connected to this case. If there is anything else, in other words if there is something that either party knows, then what I request that you do before the end of the next week is to make a filing with Miss Coughlin, and inform me of some other situation that ought to be called to my attention as I determine whether to continue in this case.

As I said at the outset, I have a duty to preside, unless there is an occasion or a reason for me not to preside. I am a member of the Judicial Conference Code of Conduct. We decide these issues.

I don't see any reason for my not presiding in this case, or that I would have the justification for passing it onto any one of my colleagues. That is on the basis of this information. If there is something else that either party understands or thinks that I should consider, then please bring it to my attention. Or indeed, if you have a contrary view as to the totality of the circumstances, then you bring it to my attention, and I will consider it.

The point I am making in a subtle way, and I will now be less than subtle. I presume this case is going to be tried. I presume that in all cases. There is going to be a winner, there is going to be a loser. And what I don't want to have happen is that, after the fact, somebody has some second thoughts about relationships or any other concerns as to whether there should

or should not have been a recusal. I am not putting you through that now, because I think you ought to have a chance to do just what I suggested, that is to think about it, and give me the benefit or any information that you have that I don't have, that I may have forgotten over the years.

I think I covered everything. Now, what you can do is to fill me in now with respect to what happened in the Magistrate's hearing. Has there been any scheduling that you want to bring to my attention, that the Magistrate hasn't dealt with?

MR. BELLOTTI: Yes, Your Honor. We have the automatic discovery by September 8, and discovery motions by September 29. And the Government has until October 7 to make a response.

THE COURT: Okay.

MR. BELLOTTI: And then there was the arraignment. The defendant pleaded not guilty to all of the counts.

THE COURT: There is no special request in terms of a speedy trial, or anything else that you want to bring to my attention?

MR. BELLOTTI: Not at this time, Your Honor, until we get discovery and we know where we are going.

THE COURT: Okay. That's all I have. Do you have anything else for me?

MR. CHIEL: No, Your Honor.

MR. BELLOTTI: No, Your Honor.

THE COURT: Thank you very much for coming.

MR. BELLOTTI: Thank you, Your Honor.

(Whereupon, at 2:20 p.m., the Hearing was adjourned.)

1. Title 28 U.S.C. § 144 provides, in part:
   Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further

APPENDIX B.

U.S. Department of Justice
*United States Attorney*
*District of Massachusetts*
*1107 J.W. McCormack Post Office and Courthouse*
Boston, Massachusetts 02109
September 4, 1992

Honorable Joseph L. Tauro
Chief United States District Judge
District of Massachusetts
1615 McCormack POCH Building
Boston, MA 02109

Re: *United States v. Nicholas Mavroules, Cr. No. 92–10243–T*

Dear Judge Tauro:

I am writing to you in connection with, and in response to, the hearing held by this court on August 28, 1992. (A copy of the transcript is appended hereto as Appendix 1). At that hearing, the court listed a number of contacts that it has had with the defendant, putative witnesses, and counsel both for the defendant and the government. The court further invited any submissions to be made by September 4, 1992 with regard to whether any party believed that the matter should be reassigned.

The government respectfully urges the court, as Chief Judge and in the exercise of the court's supervisory powers, to reassign this matter to another judge in the interest of justice. *See* Local Rule 40.1(g) of the Rules of the Federal District Court. In the alternative, the government is not yet in a position to know whether a motion for recusal may be properly advanced under the relevant statutory provisions and, thus, seeks reasonable additional time to decide whether it will file such a motion.

Two statutes govern a motion to recuse a judge—28 U.S.C. § 144 and 28 U.S.C. § 455.[1] At this point, based both on the

therein, but another judge shall be assigned to hear such proceeding....
   Title 28, U.S.C. § 455(a) provides:
   Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned....

court's description and the facts known to the government, the government does not believe that this court has any personal bias or prejudice whatsoever with respect to this matter and, thus, the government does not believe that 28 U.S.C. § 144 is applicable to the case at bar.

However, while the government is not now advancing a motion under 28 U.S.C. § 455(a), the legal principles articulated in that statute are relevant to the discussion, *infra.* The test under § 455(a) is an objective one:

> whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of a reasonable man.

*Panzardi–Alvarez v. United States,* 879 F.2d 975 (1st Cir.1989), *citing United States v. Cowden,* 545 F.2d 257, 265 (1st Cir.1976), *cert. denied,* 430 U.S. 909 (1977). *See also, United States v. Kelley,* 712 F.2d 884, 890 (1st Cir.1983). In contrast both with section 144 and with section 455(b), section 455(a) requires no determination of actual bias. Section 455(a) "did away with the 'duty to sit doctrine'. It attacks the appearance of bias, not just bias in fact." *United States v. Chantal,* 902 F.2d 1018, 1023 (1st Cir.1990).

At the same time, the First Circuit has clearly stated that there must be a sound factual basis for seeking recusal.

> "... [D]isqualification is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality. Were less required, a judge could abdicate in difficult cases at the mere sound of controversy or a litigant could avoid adverse decisions by alleging the slightest of factual bases for bias."

*In Re United States,* 666 F.2d 690, 695 (1st Cir.1981). Further, a district court's ruling on a motion for recusal is left to the sound discretion of that court, and will be overturned only on a showing of abuse of discretion. *See, e.g., Home Placement Service v. Providence Journal Co.,* 739 F.2d 671, 674 (1st Cir.1984) (First Circuit reversed Judge Selya's refusal to recuse himself where the Judge allowed the newspaper to profile him while the newspaper was a defendant in a pending case before him).

This discussion of the legal standard applicable to a ruling under section 455(a) is intended to serve two purposes. First, the government believes that these legal principles help illuminate the government's request for reassignment articulated below. Second, they make it clear that the government does not in any way suggest that this court does not have a reasonable subjective belief that it can be fair and impartial. The focus of the government's concern rather, like that of § 455(a), is in the appearance of fairness in a case which carries certain special burdens.

*This Court Should Reassign This Matter*

Under Local Rule 40.1(g), this court may return any case to the clerk of the court for reassignment "in the interest of justice or to further the efficient performance of the business of the court...." While the government has not yet found case law construing this provision, it urges the court to reassign this case in the interest of justice.

This case is bound to receive an unusual amount of publicity. It appears that this indictment is the first, in recent memory, in the District of Massachusetts to charge a sitting Congressman with violations of federal law. Whatever the outcome, there will be ample opportunity for criticism and second-guessing of the participants in this litigation.[2] The contacts identified by the

**2.** This kind of criticism could go both ways given that the court has identified contacts not only with the defendant and his counsel, but with counsel for the government as well. In the event of acquittal or in the event of conviction, there will be those people (including some of those described by the First Circuit in *In Re United States* as "objective, knowledgeable member[s] of the public") who could question the impartiality of the court or at least the appearance of impartiality.

court leave the court, and the litigative process, open to questioning (particularly in hindsight) as to whether the playing field was a level one or not, whether or not the identified contacts and relationships amount to a legal basis for recusal. It is precisely this kind of second-guessing that the court is already taking steps to avoid by bringing this issue to a head at the earliest possible time. If there are other judges on this court who do not have the kind of contacts identified here, as a pragmatic matter, this court and the litigants can avoid creation of even a shadow of a doubt as to the fairness and rectitude of this process by reassigning the case now.

As the Chief Judge of the District Court, this court is already charged with a number of administrative and other responsibilities to ensure that the court operates effectively, efficiently, and fairly. *See, e.g.* 28 U.S.C. § 137 (placing the control of the administration of the court's orders and rules in the hands of the Chief District Court Judge). This court, therefore, is in a unique position to use its supervisory powers and to survey the other district judges to determine whether there are any district judges who either have none of the kinds of contacts articulated by the court here, or who have such minor contacts as to render that judge and the litigative process unassailable.

Further, parts of this case, in particular Counts One, Two, Three, and Sixteen, charging the defendant with seeking and accepting gratuities, focus attention upon the relationship between an elected official and his constituents, and the legal restrictions on acceptance of things of value in return, at least in part, for a guarantee of access to that elected official. Much of the case will turn on government allegations that, in effect, the political process was distorted unfairly by the illegal acts of the defendant. It is imperative, therefore, that the public not perceive even the slightest suggestion that the legal process may be distorted here (to the advantage of either litigant) by the history of personal and business relationships which exists between participants in the case and the court.

Both the demonstrated public and media interest in this case and its sensitive subject matter highlight the extreme importance of ensuring both the fairness of this litigation and the public *perception* of its fairness. The government respectfully suggests that, in this case, the criteria articulated by the courts under section 455(a) can serve as benchmarks for the exercise of this Court's discretion under Local Rule 40.1(g), but should be applied with particular care to ensure that the reputation of the court as an institution remains above reproach. Whether or not each of the contacts and relationships described by this court taken individually or collectively might sustain a motion to recuse under section 455(a) in an ordinary case, this is *not* an ordinary case and cannot be treated as such. The government respectfully submits that, because of all the circumstances identified by the court in *this* case, the court, if applying the section 455(a) standard, should conclude that a "reasonable man" might well have doubts about the impartiality of the litigative process. Whether or not such a standard is technically applied, however, the court should lay to rest such potential concerns by exercising its authority under Local Rule 40.1(g) to reassign this matter to another judge in the interest of justice.

*The Request For Further Time*

The government has not had the opportunity to develop all of the facts which might be relevant to determining whether a motion to recuse under § 455(a) would properly lie in this case. The government seeks additional time to interview thoroughly persons concerning the contacts identified by the court. Those facts, as well as others which may exist but are not currently known to the government, could conceivably convince the government to file a motion to recuse or, conversely, convince the government that no such motion should be made.[3] The government is mindful that

---

**3.** Courts have recognized that a relationship between a judge and witness might be cause for recusal. *See United States v. Chantal,* 902 F.2d 1018, 1024 *citing Roberts v. Bailar,* 625 F.2d 125,

the court has asked the parties to make any submission in a timely fashion. App. pp. 5–6. *Cf. In Re United States*, 666 F.2d 690, 694 (where the government waited until after a trial resulting in a hung jury to move for recusal, the First Circuit found that an argument that the motion to recuse was not timely "might arguably have been sustainable.") Here, the government only asks that it be given reasonable additional time, and further states that any such motion for recusal would be made in a timely fashion, well in advance of trial.

In conclusion, the government urges this court to reassign this case. The reassignment would be in the interest of justice and remove any question as to the rectitude of the legal process here. In the alternative, the government hereby seeks reasonable additional time to determine whether it will file a motion to recuse under 28 U.S.C. § 455(a).

> Sincerely yours,
> /s/ A. John Pappalardo
> A. JOHN PAPPALARDO
> United States Attorney

cc: Francis X. Bellotti, Esquire

Tracy Miner, Esquire

### APPENDIX C.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

One Financial Center

Boston, Massachusetts 02111

701 Pennsylvania Avenue, N.W.

Washington, D.C. 20004

> September 8, 1992

BY HAND

Honorable Joseph L. Tauro

United States District Court

U.S. Post Office and Courthouse Building

Boston, MA 02109

Re: *United States v. Nicholas Mavroules*

Cr. No. 92–10243–T

Dear Judge Tauro:

We are writing in response to Mr. Pappalardo's letter of September 4, 1992 in which he requests that this Court reassign this case to a different judge in the "interests of justice" and, in the event that the Court does not immediately reassign the case, that the Court allow the Government additional time to file a motion to recuse. On behalf of our client, Congressman Nicholas Mavroules, we respectfully suggest that the interests of justice do not require reassignment of the matter and that additional time for a formal motion to recuse by the Government is *not* warranted.

As the First Circuit Court of Appeals has held, disqualification of a judge is appropriate *only* if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality. *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981). In his letter, the United States Attorney suggests, without providing any factual or legal support, that because this is a high publicity case, this Court's contacts *might* cause questions as to "whether the playing field was a level one or not, [and] whether or not the identified contacts and relationships amount to a legal basis for recusal." The short answer to that is that this Court put its contacts, which were minimal and with both sides of the case, on the record and invited the parties to file motions for recusal, if a legal basis for recusal existed. By not filing a motion to recuse at this time, both parties have acknowledged that a legal basis for recusal does not exist on the basis of the contacts disclosed by the Court. Given that no legal basis for recusal exists, the interests of justice do not require, or even counsel, that this case be reassigned to another judge. Indeed, the appearance of judge-shopping where there is no basis for recusal is itself antithetical to the interests of justice and suggests that the case not be reassigned.

127–129 (6th Cir.1980). In *Chantal,* the First Circuit summarizes the *Bailar* case by stating that the judge's expression of his belief in the trustworthiness of a "key witness" in a civil suit was the basis for disqualifying that judge. In

fairness, a closer reading of *Bailar* shows that the "key witness" was also one of the named defendants whom the judge dismissed from the case before trial based on the judge's high regard for him.

Having acknowledged that the Court's contacts, as openly disclosed to the parties and to the public, are not sufficient to support a motion to recuse, the United States Attorney has asked the Court for additional time to dig up other facts which might support such a motion. On behalf of our client, we strongly oppose such a request. As a defendant, Congressman Mavroules is entitled to have his case proceed expeditiously without an open question as to the trial judge's ability to decide motions brought to his attention. This Court quite rightly recognized this by disclosing its contacts to the parties at the earliest possible time and by giving the parties additional time to bring any known additional contacts to the Court's attention. Nothing gives either party the right to go out and undertake discovery of the Court's contacts without any reason to believe any additional contacts are likely to be found. Allowing the parties the right to do so in this case will not only set a precedent for future cases but also will distract the parties and the Court from addressing other issues in this case which are likely to arise and need the Court's attention in the near future.

In sum, we respectfully suggest that legal grounds for recusal do not exist, that the interests of justice do not require reassigning the case to another judge, and that the Court should not permit questions about the future of this case to linger by allowing the United States Attorney's Office additional time to attempt to find a basis for bringing a motion to recuse in the future.

> Sincerely yours,
> /s/Francis X. Bellotti
> Francis X. Bellotti
> Tracy A. Miner,
> Counsel for Defendant
> Nicholas Mavroules