UNITED STATES of America, Plaintiff,

v.

Clarence PHILLIPS, Quinton Adkins, and Lendell Murphy, Defendants.

No. 2:99–CR–107J.

United States District Court, D. Utah, Central Division.

March 31, 1999.

Order Denying Reconsideration April 19, 1999.

Brooke C. Wells, Assistant United States Attorney, Salt Lake City, UT, for plaintiff.

Edward K. Brass, Salt Lake City, UT, for defendant Phillips.

Michael R. Sikora, Salt Lake City, UT, for defendant Adkins.

Mary C. Corporon, Salt Lake City, UT, for defendant Murphy.

## MEMORANDUM OPINION AND ORDER

JENKINS, Senior District Judge.

On March 23, 1999, a status and scheduling conference was held in the above-captioned criminal action. Assistant United States Attorney Brooke C. Wells appeared on behalf on the United States; Michael R. Sikora appeared on behalf of defendant Quinton Adkins and (substituting for attorney Edward K. Brass) on behalf of defendant Clarence Phillips. Mary C. Corporon appeared on behalf of defendant Lendell Murphy.

Before the court discussed scheduling matters, the United States requested that its recently filed Motion for Reassignment of Case be considered first. In its motion, the United States asks the court to reassign this case to another judge. Although the defendants were not served a copy of the United States' motion at the time it was filed, counsel for the defendants, acknowledging that they were aware of the motion, objected to it, and after being delivered a copy in open court, agreed that the court should hear the Motion for Reassignment before delving into scheduling matters. All counsel therefore agreeing, the court heard argument on the motion. At the hearing, the court raised a question as to its power to reassign a case to another judge.

Following argument, the United States requested and was granted an opportunity to supplement its motion with additional authority. It did so by memorandum filed on March 25, 1999. The defendants were likewise given an opportunity to supplement their objections to the motion and were directed to do so by March 29, 1999. The court then reserved decision on the motion until after it received and reviewed the parties' supplemental materials. Now, after fully considering the United States' motion, and after hearing argument and reviewing the parties supplemental memoranda, and for reasons discussed below, the court denies the United States' Motion for Reassignment of Case.

### Discussion

Following the filing of the Indictment on March 17, 1999, this case was randomly assigned to this Judge pursuant to DUCrimR 57–2. Local criminal rule 57–2 provides that the assignment of criminal cases is to proceed as specified in local civil rule DUCivR 83–2. Pursuant to local civil rule 83–2 "[a]ll case assignments are *randomly* assigned by an automated case assignment system approved by the judges of the court...." DUCivR 83–2(a) (empha-

sis added). There is no other provision in the local rules that speaks to the assignment of newly-filed criminal cases.

This random case assignment system, one expressly approved by the judges of this court in accordance with the statutory command found in 28 U.S.C. § 137, has been well understood by both the bench and the bar to "prevent judge shopping by any party, thereby enhancing public confidence in the assignment process." *United States v. Mavroules,* 798 F.Supp. 61, 61 (D.Mass.1992). Indeed, it has been noted by at least one commentator that "random assignment protects the integrity of the judicial system by leaving the pairing of cases and judges to chance." Christine S. Studzinski, *The Law of the Lawyer,* 44 No. 4 PRAC.LAW. 7 (June 1998). Courts have also recognized the role that random assignment procedures play in promoting fairness and impartiality and in reducing the dangers of favoritism and bias. *SeeState v. Sprint Comms. Co.,* 699 So.2d 1058, 1063 (La.1997). For this reason, attempts to manipulate the random case assignment process are subject to universal condemnation. *See United States v. Conforte,* 457 F.Supp. 641, 652 (D.Nev.1978), *aff'd,* 624 F.2d 869 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); *see also* Jonathan L. Entin, *The Sign of "The Four": Judicial Assignment and the Rule of Law,* 68 MISS.L.J. 369 (1998) (noting that "[m]anipulation of judicial assignments can deprive litigants of their right to a fair hearing and contravene basic principles of due process"); Kimberly Jade Norwood, *Shopping for Venue: The Need for More Limits on Choice,* 50 U. MIAMI L.REV. 267, 300 (1996) (stating that because judge-shopping "would invite public skepticism of the ability to receive justice in our court system and would cheapen the judicial process ... judge shopping is still 'universally condemned' by the courts") (citing cases). Notably, in some districts, the role that the random case assignment process plays in promoting the fairness

and integrity is so well-recognized that the assignment of case is done in public. *See, e.g.,* Rules of the United States District Court for the Southern District of New York, Rule 8(a) (providing that the assignment of criminal cases will take place at the arraignment at which time "[t]he magistrate judge will draw a judge's name by lot in open court and announce the assignment so effected"); Rules of the United States District Court for the Eastern District of New York, Rule 50.2(b) ("All cases shall be randomly assigned by the clerk or his designee in public view in one of the clerk's offices....").

Nevertheless, despite the recognized value of randomly assigning cases, the United States now argues that the history of its prior attempt to charge and convict these defendants in a case now-dismissed, warrants a deviation from that practice and justifies the reassignment of this case to a judge of its choosing.[1] A brief recitation of such history is helpful.

The United States first charged these defendants more than two years ago. On January 8, 1997, an indictment was filed charging the defendants with federal narcotics violations. That case was assigned, according to the district court's random case assignment system, to the then-Chief Judge. *(See United States v. Phillips,* No. 2:97–CR–003W.) The randomly assigned judge referred the case to a magistrate judge, who was directed to, among other things, "receive all motions, hear oral argument, [and] conduct evidentiary hearings as deemed appropriate...." *(Id.,* Order of Reference, file dkt. no. 34.) Among the many pretrial motions filed by the defendants during this pretrial stage were motions to suppress. The magistrate judge held evidentiary hearings on these motions on May 14, June 11, and October 6, 1997.

On or about June 17, 1997, the assigned judge assumed senior status and his then-

---

1. There is no indication in the record or otherwise that the judge to whom the United States would like to have the case reassigned would be willing to "accept" a case assigned by something other than chance.

pending cases were reassigned to others. Pursuant to local rule, case no. 2:97–CR–003 was *randomly* reassigned to another judge. (*See id.,* Notice, file dkt. no. 81/*United States v. Phillips,* 2:97–CR–003B.) The newly assigned judge left intact the referral to the magistrate. On January 21, 1998, the magistrate judge issued a Report and Recommendation that the defendants' motions to suppress be denied. On April 9, 1998, without a hearing, the assigned judge adopted the Report and Recommendation in its entirety and overruled the objections thereto. (*See id.,* Order Adopting Report and Recommendation, file dkt. no. 113.)

After several delays and continuances, a trial date was set for November 10, 1998. On October 28, 1998, defendant Adkins filed a motion to dismiss for violation of the Speedy Trial Act—a motion in which the other two defendants joined. The assigned judge held a hearing on this motion on February 5, 1999, at which time he indicted that he would dismiss the case, but that the issue of whether dismissal would be with or without prejudice would be taken under advisement. At that time, the assigned judge noted that if dismissal was without prejudice, the United States may refile charges and a new judge would likely be assigned. (*See id.,* Partial Transcript of Feb. 5, 1999 hearing.) By Order dated March 5, 1999, the assigned judge granted the defendants' motion to dismiss for violation of the Speedy Trial Act but did so without prejudice. (*See id.,* Memorandum Opinion and Order, dated March 5, 1999, file dkt. no. 155.) Thus, the first prosecution of these defendants, after pending for more than two years, ended in a dismissal.[2]

On March 17, 1999, twelve days after the dismissal in case no. 2:97–CR–003B, the present Indictment was filed. In accordance with the local court rules, the case was assigned a docket number, 2:99–CR–107, and was randomly assigned to this Judge. The next day, March 18, 1999, defendants Phillips and Adkins, who had remained in custody during the pendency of the now-dismissed case, were arraigned and pleaded not guilty in the newly filed case. On March 19, 1999, the United States filed the instant Motion for Reassignment of Case. Three days later, on March 22, 1999, defendant Murphy was arraigned and also pleaded not guilty.

■ Initially, citing DUCivR 42–1, the United States asserted that the history just recounted supported a reassignment of this case to the requested judge because assignment to any judge other than that judge "would entail substantial duplication of labor and resources." (Mot. for Reassignment of Case, at 2.) At oral argument, the United States continued its reliance on this rule as authority for reassignment. As demonstrated below, such reliance is misplaced.

To begin, DUCivR 42–1 applies only to the "consolidation" of cases and not to "reassignments." Moreover, DUCivR 42–1 applies only to civil actions and not to criminal cases. The consolidation of criminal cases is controlled by DUCrimR 57–3. In addition, even if DUCivR 42–1 did apply in the criminal context, by its terms it is inapplicable here. Notably, the opening sentence of the rule describes its limited application: *"Whenever two or more cases are pending before different judges,* any party may file a motion to consolidate the cases for hearing by a single judge...."* DUCivR 42–1 (emphasis added). This language makes clear that the rule only provides for consolidation when there are two or more *pending* cases. This requirement is made doubly clear by the rule's last sentence, which states that if the motion to consolidate is granted, "the case will be consolidated into the case with the lower

---

**2.** Subject to certain exclusions, the Speedy Trial Act generally requires that criminal defendants must be tried within seventy days of the later of the date the indictment is filed or the date on which the defendant makes his first appearance on the charges contained in the indictment. *See* 18 U.S.C. § 3161(c)(1). If not, dismissal is required. *See* § 3162(a)(2).

number." *Id.* In the present circumstances, however, there is only one pending case, case no. 2:99–CR–107J. The only other case counsel for the United States refers to has been dismissed and is no longer pending. There is no lower-numbered case available for consolidation. Therefore, DUCivR 42–1 does not support the United States' request for reassignment.

Nor does the criminal consolidation rule, DUCrimR 57–3, provide the United States with any support. Just like the civil rule, consolidation in a criminal case may only be accomplished if there are two or more criminal cases *pending* against the same defendant. *See* DUCrimR 57–3(a). Because that requirement cannot be met, in this instance, DUCrimR 57–3 *offers no support for reassignment.*

In its supplemental memorandum filed in support of its motion, the United States offers an alternative authority for case reassignment. Without citation to any case law, the United States argues that this court has "inherent authority" to unilaterally reassign this case to another judge. According to the United States, this authority is conferred upon the court by the present local rules.

In support of this argument, the United States cites to DUCivR 83–2, and places particular emphasis on the first sentence the rule that speaks to judicial recusal, where it is stated that "[i]n the event of a judicial re[c]usal, another judge will be assigned." *See* DUCivR 83–2(b). Apparently, the United States believes that this truncated quotation provides support for reassignment. This reading, however, ignores the remainder of that sentence, which reads that the other judge will be assigned "through the random selection case assignment system described in subsection (a) of this rule." *Id.* Simply put, this rule provides no authority for unilateral case reassignment to a particular judge but, to the contrary, confirms this district's

expressed preference for random case assignments.

The United States also points to the local rules concerning the assignment of habeas corpus proceedings and 28 U.S.C. § 2255 motions as authority for case reassignment. *See* DUCivR 83–2(d) & (e). For reasons that should be perfectly obvious to the United States, these rules are simply inapplicable in newly filed criminal cases. Moreover, the existence of an express local rule permitting—in narrowly circumscribed cases, some mandated by statute [3]—a limited deviation from the random case assignment system, militates against a finding that the court has "inherent authority" to reassign cases in other circumstances.

Nor does the United States' citation to DUCrimR 57–3(b) offer any support for the claimed "inherent authority" to reassign. The United States cites this rule, apparently, because the last sentence contains the word "reassignment." As discussed previously, however, local criminal rule 57–3 only addresses the consolidation of *pending* criminal cases. There is only one case pending against these defendants. Absent another pending case, this rule simply offers no support whatsoever for the case reassignment now requested.

 Most troubling of all the United States' arguments concerning "inherent authority" is the suggestion that the "Clerk of the Court" has "the inherent authority to refuse, relinquish and/or reassign or cause to be reassigned cases under a variety of circumstances." (Mem. in Supp. of the Mot. of the United States' for Reassignment of Case, at 2.) The clerk of the court has no such power. By statute, the power to divide the business of the court is vested only in the judges of this court. *See* 28 U.S.C. § 137. It is through promulgation of local court rules or standing orders that the judges exercise this power. *See id.* Indeed, among other

---

**3.** 28 U.S.C. § 2255 expressly provides that a prisoner attacking the constitutionality of his

sentence or conviction may do so before the court which imposed the sentence.

things, the chief judge is called upon to make sure that these rules are complied with. *See id.* It is clear that neither under these rules nor under any statute has the clerk of the court been given any power to make any changes to the court's adopted random case assignment system.

The rules of practice of the United States District Court as they exist were adopted by Order of the Court dated May 8, 1991, after extensive study by the Advisory Committee on revisions of the Local Rules of Practice. At that time "the format [had] been modified to include, in addition to the Civil Rules, the Criminal Rules...." Rules of Practice for the United States District Court for the District of Utah, Foreword (June 1991). Thereafter, after consideration by the Advisory Committee and upon public notice, the rules have been amended from time to time, all pursuant to order of the court, the last being in on July 18, 1997 (effective September 1, 1997), when a new updated numbering system and modest amendments were adopted.

There have been *no amendments* to the rules since that time. They have governed case assignment in the past and they govern it today.

Almost as troubling is a comment made by counsel for the United States at the March 23, 1999 hearing. At that time, counsel indicated that informal case reassignments in criminal cases have occurred in this district. The fact that case reassignments may have previously occurred does not answer the fundamental question as to whether a randomly assigned judge, at the request of a party, has the power to reassign the case to another judge selected by the requesting party. A decision to contravene the express language of this district's local rules should never be made lightly, if at all. No single judge of this court is in a position to avoid the express command of the local rules regarding case assignments. What is even more clear is that the clerk of the court has no power to deviate from the random case assignment system except as expressly provided by

the local rules. *See* DUCivR 83–2(d) & (e). Counsel's suggestion that such may have taken place perhaps invites further examination in another forum.

█ Even assuming that the United States is correct in its assertion that this case should be reassigned, only the chief judge of this court—and not any other judge of this court or the clerk of the court—may do so. *See* 28 U.S.C. § 137. But even the power of the chief judge has its limits. As noted by the Tenth Circuit, in a matter arising out of this very court, the chief judge has no power to withdraw an assignment and reassign a case if the rules and orders of the court provide otherwise. *See Utah–Idaho Sugar Co. v. Ritter,* 461 F.2d 1100, 1103 (10th Cir.1972) ("[U]nder the terms of 28 U.S.C. § 137, it is unquestioned that the division of the court's business is the responsibility of the judges and not the responsibility of the chief judge acting unilaterally. The latter's duty is to [e]nsure that the agreed upon rules are enforced and are administered to carry out their purpose...."). In *Utah–Idaho Sugar,* the court of appeals determined that the chief judge's act of choosing which cases to assign to another judge "did not comply with the ... mandate that the assignment of cases be equal and random," and issued the extraordinary writ of mandamus directing the chief judge to transfer the case back to the judge to whom it was originally assigned under the court's then existing rules. *Id.* at 1104; *see also* 28 U.S.C. § 137 (providing that the chief judge may assign cases only when the rules and orders of the court do not otherwise prescribe).

In this instance, it is undisputed that the local rules, as detailed above, provide that all criminal cases are to be assigned at random. DUCrimR 57–2; DUCivR 87–2(a). There is simply no extant authority in this district's local rules for any judge of this court to unilaterally make a decision concerning case assignments. Even if he so wished, the chief judge himself cannot contravene these rules. *See* 28 U.S.C.

§ 137; *Utah–Idaho Sugar,* 461 F.2d at 1104.

■ As for the United States' suggestion that the requested judge, the judge "who supervised the case for nearly two years," (Mem. in Supp. of the United States' Mot. for Reassignment of Case, at 5), may be better equipped to handle the case because he "is familiar with the issues related to the case and has issued several rulings related to detention and suppression," (Mot. for Reassignment of Case, at 1), the United States Supreme Court has recognized that, "[j]udges, if faithful to their oath, approach every aspect of each case with a neutral and objective disposition. They understand their duty to render objective decisions upon a proper record and to disregard earlier judicial contacts with a case or party." *Liteky v. United States,* 510 U.S. 540, 561–62, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (Kennedy, Blackmun, Stevens, and Souter, JJ., concurring). Thus, even if this case had been assigned to, or is reassigned to, the requested judge, any special knowledge he may have gleaned from "supervising" the dismissed criminal case, should be "put aside" or "disregard[ed] for purposes of this case." *See id.* at 562–63, 114 S.Ct. 1147. If not, as suggested by Justices Kennedy, Blackmun, Stevens, and Souter, he should heed his judicial oath and seek recusal. *See id.* at 563, 114 S.Ct. 1147. Thus, any familiarity that another judge, including the requested judge, may have with the issues and the defendants from a prior case cannot support reassignment of this case.

Noting that in the dismissed case the previously assigned judge issued several rulings relating to suppression "resulting in the law of the case," the United States also asserts that assignment of the case to this Judge, or any other judge other than the requested judge, will "entail duplication of labor and resources." (Mot. for Reassignment, at 1–2.) Although the question of the "law of the case" has not yet been squarely presented to this court, rulings concerning suppression of evidence in a dismissed criminal case are not necessarily the law of the newly filed case. It is undisputed that no final judgment was ever issued in the dismissed case. *See United States v. Carnes,* 618 F.2d 68, 69 (9th Cir.1980) (noting that a decision is final in a criminal case only upon sentencing) (citing *Parr v. United States,* 351 U.S. 513, 518, 76 S.Ct. 912, 100 L.Ed. 1377 (1956)). For some form of estoppel or issue preclusion to apply, the court notes that generally the issue in question—in this case the suppression issue—must have been actually litigated and determined by a final and valid judgment. *See* Restatement (Second) of Judgments § 27 (1982).

■ In addition, even if the issue was actually litigated and determined by a final judgment, a party is not ordinarily precluded from relitigating an issue in a subsequent action if the party could not have obtained review of the judgment in the initial action. *See id.* § 28(1). A decision concerning suppression in a case that has been dismissed is not a final appealable decision. *See Cogen v. United States,* 278 U.S. 221, 223–24, 49 S.Ct. 118, 73 L.Ed. 275 (1929); *United States v. Mock,* 604 F.2d 336, 339 (5th Cir.1979). As noted by the United States Supreme Court, even "[i]f the motion is denied, the objection to the admissibility of the evidence is usually renewed when the [evidence] is offered at trial. And, although the preliminary motion was denied, the objection made at trial to the admission of evidence may be sustained." *Cogen,* 278 U.S. at 224, 49 S.Ct. 118. Accordingly, *any* judge assigned to the newly filed criminal case, including the judge previously assigned the dismissed case, may be faced with relitigation of the suppression issues. Arguments favoring reassignment on the grounds of duplication of labor and resources, or notions of "law of the case," are therefore without merit.

### Conclusion

In its Motion for Reassignment, the United States, concedes that no express rule covers the relief that it now seeks and

relies on rules claimed to be analogous to provide some guidance, but not express direction to the court, and then, as a secondary position, asserts the inherent power of the court to grant such relief.

The purpose of the rules relating to assignment is to ensure that cases are assigned at random to avoid the evils, real or perceived, of forum shopping. One must distinguish between recusal and reassignment. In the event a judge recuses him or herself, the case is returned to a common pool and another random assignment is made. There is no express power on the part of the assigned judge to reassign a case. He or she may accept it. He or she may recuse. But he or she may not override the random assignment system as mandated by the court's rules or the court's standing orders. They govern. He or she has no power unilaterally to modify the rule. The rules are court rules, not an individual judge's rules. As provided for in agreed-upon rules of this court, the matter is different, and is handled differently, when there is a pending case, prior in time, with a common issue or common parties, or both, with which the new subsequent case may be consolidated in an approved process by application to either of the randomly assigned judges. The case is different if one is dealing with a habeas petition relating to a prior criminal matter. The matter is different when processing a plea bargain. Reassignment, as the United States envisions it, is simply not available in this case under the lawful rules of this court. Therefore, for the reasons discussed at length above,

**IT IS ORDERED** that the United States' Motion for Reassignment of Case is DENIED.

### ORDER

On April 15, 1999, a hearing was held on defendant Murphy's and defendant Adkins' motions to suppress. Michael R. Sikora appeared on behalf of defendant Quinton Adkins, who was present, and Mary C. Corporon appeared on behalf of defendant Lendell Murphy. Edward K. Brass, counsel for defendant Clarence Phillips, only made a brief appearance by telephone to state that he did not join in the motion and did not wish to participate in the hearing. Assistant United States Attorney Brooke C. Wells appeared on behalf on the United States.

Before turning its attention to the defendants' motions, the court first dealt with a motion recently filed by the United States. That motion, entitled "Government's Objection to Decision Not to Reassign Case and Request for Reconsideration; Government's Alternative Motion to Strike Evidentiary Hearing and Apply Law of the Case; Government's Challenge to Defendant Murphy's Standing," was filed on April 12, 1999, and sought, among other things, reconsideration of court's March 31, 1999 Memorandum Opinion and Order denying the United States' Motion for Reassignment of Case. In addition, the motion requested that the hearing on the motions to suppress be stricken and the "law of the case" doctrine applied. This argument is based on the United States' position that because the suppression issue was reviewed in a previously-filed but now-dismissed case concerning the same defendants, this court should abstain from independently reviewing the suppression issue and should instead adopt a non-final conclusion reached by another judge in the now-dismissed case.

Without hearing argument, and for reasons contained in its March 31, 1999 Memorandum Opinion and Order, the court denied the United States' motion for reconsideration and reaffirmed its denial of the motion for reassignment. Because defendant Murphy's Motion to Dismiss was improperly filed it too was denied. In addition, the court rejected the United States' "law of the case" argument and denied the motion to strike the suppression hearing. For purposes of clarity, the court will briefly review the case law concerning the "law of the case" and then address the court's basis for concluding that its application is not warranted here.

## Discussion

As a starting point, the United States Supreme Court has recognized the "law of the case" doctrine "is an amorphous concept." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The High Court's most recent detailed examination of the doctrine came in 1988, in *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). In *Christianson,* the Court discussed the application of the "law of the case" in a action involving a patent dispute and antitrust claims. The issue before the Court was one of jurisdiction: Should the Federal Circuit have jurisdiction over the appeal because it "arises under" patent law or should jurisdiction have rested with the Seventh Circuit? After the district court granted summary judgment for the plaintiff on the antitrust claims, Colt filed an appeal in the Federal Circuit arguing that the case arose under patent law. The Federal Circuit disagreed and transferred the appeal to the Seventh Circuit. The Seventh Circuit, however, transferred the appeal back, stating that the Federal Circuit was "clearly wrong" when it concluded it did not have jurisdiction. Upon transfer back, although the Federal Circuit concluded that the Seventh Circuit itself was "clearly wrong" on the jurisdiction question, the court addressed the merits of the appeal and reversed the decision of the district court. The plaintiff then petitioned the High Court asserting that the Federal Circuit was without jurisdiction to hear the appeal.

One of the arguments advanced by Colt in support of the Federal Circuit's jurisdiction was the doctrine of "law of the case," which, according to Colt, barred the Federal Circuit from challenging or reviewing the Seventh Circuit's decision on jurisdiction. The High Court began its analysis by noting that the doctrine " '[a]s most commonly defined, ... posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " *Id.* at 815–16, 108 S.Ct. 2166 (quoting *Arizona v. California,* 460 U.S.

605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). This doctrine, noted the Court, "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.' " *Id.* at 816, 108 S.Ct. 2166 (quotation omitted). After noting these principles, the Court turned to Colt's argument and found it flawed. First, it noted that if the "law of the case" was to apply it was the Federal Circuit's first decision on jurisdiction that would be the "law of the case." *Id.* at 817, 108 S.Ct. 2166. Nevertheless, even assuming that the law of the case was the Seventh Circuit's jurisdictional decision, the Court concluded that the application of the doctrine is not mandatory but " 'merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power.' " *Id.* (quoting *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912)). Instead, the Court stated that "[a] court has the power to revisit prior decisions of its own or of a coordinate court *in any circumstance,* although as a rule courts should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.' " *Id.* (quoting *Arizona,* 460 U.S. at 618 n. 8, 103 S.Ct. 1382) (emphasis added).

The Tenth Circuit has echoed these sentiments. Most recently, in *United States v. Alvarez,* 142 F.3d 1243, 1247 (10th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 242, 142 L.Ed.2d 199 (1998), the court noted that the law of the case doctrine " 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' " (quoting *Arizona,* 460 U.S. at 618, 103 S.Ct. 1382). Like the Supreme Court, the Tenth Circuit has also noted that the doctrine " 'is not an inexorable command ... but, rather, only a rule of practice in the courts....' " *Id.* (citations and quotations omitted). However, the court has recognized that the grounds for departing from the "law of the case" are narrow and only arise in three circum-

stances: (1) when evidence in a subsequent trial is substantially different; (2) when a controlling authority has subsequently issued a contrary ruling; and (3) when the decision was clearly erroneous and it would be manifestly unjust to follow it. *Id.* (citations omitted). In *Alvarez,* the court concluded that the decision of a prior appeals panel, reversing the district court and holding that a search of the defendant's car did not violate the Fourth Amendment, was the "law of the case." Therefore, because none of the narrow circumstances that would permit a departure from the doctrine were present, the suppression issue would not be revisited on the defendant's appeal following his conviction. *Id.*

Many courts have concluded that the doctrine applies not only to final judgments, but also to matters decided during the course of a trial—*i.e.,* interlocutory orders—and have determined that "law of the case is not synonymous with preclusion by final judgment." *Pit River Home and Agric. Coop. Assn. v. United States,* 30 F.3d 1088, 1097 (9th Cir.1994) (citation omitted); *see also* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4478 (1981 & Supp.1998) ("These rules do not involve preclusion by final judgment; instead, they regulate judicial affairs before final judgment."); *Id.* § 4478, at 754 n. 0.2 (Supp.1999) (citing cases from the Second, Third, Seventh, and Ninth Circuits that have adopted this position).

■ The Tenth Circuit, however, is not among these courts. In this circuit, the doctrine is synonymous with final judgment. The preclusive effect of the "law of the case" only applies if there was a final judgment that decided that issue. *See United States v. Bettenhausen,* 499 F.2d 1223, 1230 (10th Cir.1974) (citing *United States v. United States Smelting Refining & Mining Co.,* 339 U.S. 186, 198–99, 70 S.Ct. 537, 94 L.Ed. 750 (1950)); *see also Unioil v. H.E. Elledge (In re Unioil, Inc.),* 962 F.2d 988, 993 (10th Cir.1992) ("Only final judgments may qualify as law of the

case; where a ruling remains subject to reconsideration, the doctrine is inapplicable.... Consequently, if the ... pretrial decision ... was not a final order, it could not become law of the case simply because [the defendant] did not pursue an immediate interlocutory appeal....") (internal citations omitted).

In *United States v. Bettenhausen,* 499 F.2d 1223 (10th Cir.1974), after the defendant's first trial ended in a mistrial, a retrial was commenced and the defendant was convicted of various income tax-related offenses. At his first trial, the defendant had asserted an insanity defense. Following examination by government psychiatrists, the trial court held a hearing and concluded that the defendant was competent enough to stand trial. Nevertheless, the court allowed the issue of the defendant's sanity to be submitted to the jury. In his retrial before a different judge, the defendant again wanted the sanity issue put before the jury. Although the issue of the defendant's sanity was discussed during the course of the trial, the judge instructed the jury that the sanity issue was not before them. On appeal, the defendant argued, among other things, that the judge at his retrial committed error because the ruling of the first judge that allowed the sanity issue to be submitted to the jury was "law of the case." *Id.* 1229–30.

The Tenth Circuit pointedly disagreed, however. In its eyes, "[t]he rule of the law of the case does not apply unless there is a final judgment that decided the issue." *Id.* at 1230 (citations omitted). Accordingly, the court concluded that the second judge's ruling in the defendant's retrial did not offend the "rule of law of the case" because the ruling in the first trial "could have been reconsidered by the trial court and was not final." *Id.*

Several other courts, including the First, Fifth and Eighth Circuits, share the Tenth Circuit's view and hold that if the trial decision was interlocutory in nature and subject to reconsideration, the doctrine of

law of the case is inapplicable. *See Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.,* 48 F.3d 1066, 1070 (8th Cir. 1995); *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 185 (5th Cir.1990); *Union Mutual Life Ins. Co. v. Chrysler Corp.,* 793 F.2d 1, 15 (1st Cir. 1986); *see also United States v. United States Smelting,* 339 U.S. at 199, 70 S.Ct. 537 ("We think that it requires a final judgment to sustain the application of the rule of law of the case just as it does for the kindred rule of *res judicata.*").

### Analysis

■ What the United States fails to recognize is that the present case is distinguishable from those recognized instances where the doctrine of "law of the case" applies. Most important, as stated by the Supreme Court, the doctrine only applies when the court is dealing with "'subsequent stages in the same case.'" *Christianson,* 486 U.S. at 816, 108 S.Ct. 2166 (quotation omitted). Clearly, this is not the same case as the case that was before another judge. That case, although it did involve the same persons as defendants, was a case that was dismissed. It no longer exists except as history. Following dismissal, charges were presented to a new grand jury. An indictment was returned and filed with the clerk's office. A judge was selected at random to preside over the case. The defendants were then brought before the court for arraignment and a trial date was set. Indisputably, although the issues may be similar, this is not the "same case." Because this is not a later stage in same case, the doctrine of law of the case has no application here. *See Christianson,* 486 U.S. at 816, 108 S.Ct. 2166; *see also Society of Separationists, Inc. v. Herman,* 939 F.2d 1207, 1214 (5th Cir.1991) ("The doctrine [of law of the case] is applicable only 'during the pendency of ... a single proceeding, and operates to foreclose re-examination of decided issue either on remand or on a subsequent appeal.'") (quotation omitted); *United States v. 49.01 Acres of Land,* 802 F.2d 387, 389–90 (10th Cir.1986) (noting that "law of the case applies only to different

proceedings in the *same* litigation") (citations omitted) (emphasis added).

Moreover, other than the order of dismissal, no order of the court in the dismissed case was final. *See Cogen v. United States,* 278 U.S. 221, 223–24, 49 S.Ct. 118, 73 L.Ed. 275 (1929) (noting that a pretrial decision on a motion to suppress is not a final appealable order). The issue on suppression was not entirely settled: the defendants would have had another opportunity to challenge the admissibility of the evidence at trial. *See Cogen,* 278 U.S. at 224, 49 S.Ct. 118 (noting that even "[i]f the motion [to suppress] is denied, the objection to the admissibility as evidence is usually renewed when the [evidence] is offered at trial. And, although the preliminary motion was denied, the objection made at trial to the admission of the evidence may be sustained."); *see also Bettenhausen,* 499 F.2d at 1230 (holding that the "law of the case" doctrine does not apply unless the ruling was not subject to reconsideration or was otherwise final). Therefore, any concerns about "'protecting the finality and efficiency of the judicial process'" are simply not implicated. *See Christianson,* 486 U.S. at 816, 108 S.Ct. 2166. There is no law of **this** case (at least not yet). Accordingly, the doctrine of law of the case does not prevent this court from examining, as requested, the lawfulness of the search of the defendants.

### Conclusion

For the reasons discussed above and at the April 15, 1999 hearing, the doctrine of law of the case will not be applied to limit this court's review of the suppression issues raised by the defendants. Therefore,

**IT IS ORDERED** that the United States' Objection to Decision Not to Reassign Case and Request for Reconsideration is DENIED;

**IT IS FURTHER ORDERED** that the United States' Alternative Motion to Strike Evidentiary Hearing and Apply Law of the Case is DENIED;

**IT IS FURTHER ORDERED** that because defendant Murphy's Motion to Dismiss filed on March 25, 1999, was not filed in accordance with DUCrimR 12–1(b), DUCrimR 47–1, and DUCivR 7–1(b)(1), it is summarily DENIED without prejudice.