**VAQUERIA TRES MONJITAS, INC. and Suiza Dairy, Inc. Plaintiffs**

v.

**Luis RIVERA CUBANO, et al. Defendants**

**No. CIV. 04–1840SEC.**

United States District Court, D. Puerto Rico.

Oct. 14, 2004.

Enrique Nassar–Rizek, Enrique Nassar Rizek & Associates, San Juan, PR, Jose R. Lazaro–Paoli, Jose R. Lazaro Paoli, San Juan, PR, Rafael Escalera–Rodriguez, Reichard & Escalera, Thomas Trebilcock–Horan, Reichard & Escalera, San Juan, PR, for Vaqueria Tres Monjitas, Inc., Suiza Dairy, Inc., Plaintiffs.

Gary H. Montilla–Brogan, Quinones & Sanchez, PSC, San Juan, PR, for Luis Rivera–Cubano, In his Official Capacity as the Secretary of the Department of Agriculture for the Commonwealth of Puerto Rico, Juan R. Pedro–Gordian, In his official capacity as Administrator of the Office of the Mil Industry Regulatory Adminis-tration for the Commonwealth of Puerto Rico, Defendants.

## ORDER

CASELLAS, District Judge.

Among the matters pending before the Court is a "Notice of Related Case and Motion for Transfer Pursuant to Local Rule 3.2" filed by Defendants (Docket # 7). In said motion Defendants inform the Court that an identical case had been previously filed by Plaintiffs (Civil No. 04–1694(CCC)) and that, the day after U.S. District Judge Carmen Consuelo Cerezo denied Plaintiffs' request for a preliminary injunction, Plaintiffs voluntarily dismissed the suit and filed the instant action, again requesting a preliminary injunction. Plaintiffs have opposed Defendants' request to transfer the case. After carefully reviewing the record, the related case, and the applicable law, we find that Defendants' motion to transfer must be **GRANTED**.

### Procedural Background

On July 9, 2004 Plaintiffs, Suiza Dairy, Inc. and Vaqueria Tres Monjitas, Inc., filed a related case against Defendants Luis Rivera Cubano—in his official capacity as the Secretary of Agriculture—and Juan R. Pedro Gordián—in his official capacity as Administrator of the Office of the Milk Industry Regulatory Administration—seeking declaratory and injunctive relief (Civil No. 04–1694(CCC)—Docket # 1). The case was assigned to Judge Carmen Consuelo Cerezo. Plaintiffs also filed a separate motion seeking preliminary injunctive relief (Civil No. 04–1694(CCC)—Docket # 2). The same was denied on July 28, 2004 (Civil No. 04–1694(CCC)—Docket # 9). Plaintiffs subsequently moved for reconsideration (Civil No. 04–1694(CCC)—Docket # 11), which the Court again denied on August 12, 2004 (Civil No. 04–

1694(CCC)—Docket # 12). The following day, August 13, 2004 at 4:00 P.M., Plaintiffs filed a "Notice of Voluntary Dismissal Without Prejudice Pursuant to Fed. R.Civ.P. 41(a)(1)(i)" (Civil No. 04–1694(CCC)—Docket # 13). That same day, at 5:14 P.M., and prior to the entry of Judgment in the first case, Plaintiffs filed the instant case (Civil No. 04–1840(SEC)—Docket # 1). The complaints filed by Plaintiffs in the two cases are identical except for the order in which the Plaintiffs appear in the case caption and text of the complaint and the inclusion of an equal protection claim in the second case.

**Applicable Law and Analysis**

Defendants have moved to transfer the case to its initially assigned judge, Honorable Carmen Consuelo Cerezo, arguing that Plaintiffs have attempted to manipulate the Court's random assignment process by voluntarily dismissing their first suit and refiling again the same day. Plaintiffs counter averring that, pursuant to F.R.Civ.P. 41(a)(1)(i), they were entitled to voluntarily dismiss their case without prejudice and refile in a future occasion. Although Plaintiffs are technically correct in that assertion, what they may not do, and we cannot stress this enough, is abuse the Court's processes by using Rule 41 as a loophole to circumvent an unfavorable ruling. The impropriety of Plaintiffs' actions is blatant.

"The semblance of judge-shopping ... is [ ] a concern when a litigant discontinues a fray, only to start over again on another day." *Nat'l Treasury Emp. Union v. IRS*, 765 F.2d 1174, 1175 n. 5 (D.C.Cir.1985). It "doubtless disrupts the proper functioning of the judicial system and may be disciplined." *Standing Comm. on Discipline of the U.S. Dist. Ct. for the Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1443 (9th Cir.1995). These, "attempts to manipulate the random case assignment process are

subject to universal condemnation." *United States v. Phillips*, 59 F.Supp.2d 1178, 1180 (D.Utah 1999)(*citing United States v. Conforte*, 457 F.Supp. 641, 652 (D.Nev. 1978), *aff'd*, 624 F.2d 869 (9th Cir.1980)). Absent on point First Circuit case law, we proceed to discuss how other courts have dealt with instances of judge-shopping.

The Ninth Circuit in *Hernandez v. City of El Monte*, 138 F.3d 393 (9th Cir.1998) discussed the practice of judge-shopping as well as the district court's prerogative to sanction said practice. Although the Ninth Circuit reversed the dismissal with prejudice of plaintiffs' action, holding that the district court abused its discretion in failing to consider less drastic sanctions, it upheld the district court's finding of judge-shopping. The plaintiffs in *Hernandez* had originally filed their action in federal court. One month after filing their action in federal court, and eighteen days after receiving notice of the assignment to a particular judge, the plaintiffs filed an identical action in state court, shuffling the order in which the names of the parties appeared as to effectively change the case caption. The defendants removed this second action to federal court. When the district court inquired as to the second filing, the plaintiffs explained that they had initially filed in federal court because of discovery advantages but then decided to dismiss that action and file in state court in order to gain advantages in jury selection. The district court then dismissed the action with prejudice upon the defendants' motion to dismiss. Although the dismissal with prejudice was reversed, the Ninth Circuit recognized that "[t]he district court's inherent power to impose dismissal or other appropriate sanctions therefore must include the authority to dismiss a case for judge-shopping." *Id.* at 399.

In *Smith v. Mt. Sinai Hospital*, 1985 WL 561, No. 84 Civ. 9111–CSH (S.D.N.Y.

Apr. 22, 1985), *aff'd*, 857 F.2d 1461 (2d Cir.1987), the plaintiff moved to voluntarily dismiss the complaint and later refiled the same complaint. The defendants alerted the Court to this fact, alleging that the plaintiff's counsel had expressed that she did not want to "deal" with the first assigned judge and "wanted to get away from" him and would therefore withdraw the complaint without prejudice and refile it again in order to obtain a different judge. The plaintiff's attorney sharply disputed this version of the facts. She averred that she had moved to dismiss the complaint in order to protect her client from the divulgation of certain information she learned from the defendants' counsel and, that after discussing the same with her client, she decided that the information would not have as negative of an impact as the defendants' counsel had first led her to believe and refiled the complaint. The Court found that the defendants' allegations "at the very least raise the appearance of 'judge-shopping.'" *Id.* at *2. Pursuant to its local rules, the Court proceeded to transfer the action back to the original judge, stating that the case could be returned if the first judge found that the local rule banning judge-shopping had not been violated.

In *In re Fieger*, 1999 WL 717991, 1999 U.S.App. Lexis 22435, No. 97–1359 (6th Cir. Sept. 10, 1999) the plaintiffs filed thirteen duplicate complaints in the same district and then dismissed all but one of them. Their attorney publicly admitted that he had done so in order to ensure assignment to his judge of preference. He was sanctioned and reprimanded by a three-judge panel. The Sixth Circuit upheld the reprimand, finding that Fieger had "circumvented the random assignment rule," and thus "violated the [local] rules, as well as his duties as an officer of the court." *Id.*, 1999 WL 717991, *1, 1999 U.S.App. Lexis 22435, at * 3.

Similarly, in *Murray v. Sevier*, 1992 WL 75212, 1992 U.S. Dist. Lexis 4057 (D.Kan. March 13, 1992), counsel filed six actions, all alleging the same general factual claims. Each was assigned a different case number and each was independently was assigned to a judge. The following business day, counsel voluntarily dismissed all but one of the cases. In the remaining case, he requested leave to amend the complaint to add the parties contained in the dismissed actions. The Court expressed that it could "easily thwart these efforts [to judge-shop] by the judicious exercise of the tools of judicial administration." *Murray*, 1992 WL 75212, *1, 1992 U.S. Dist. Lexis at *2(*quoting Gen. Elec. v. Merhige*, 1972 WL 2601 (4th Cir.1972)). The *Murray* Court then decided that it would dismiss the action without prejudice until it could hold a conference with all litigants in which it would determine whether the case would be assigned to the first judge selected when all the cases were filed or, alternatively, consolidate all cases before it, or another court.

It stems from this discussion that a court faced with judge-shopping has the authority to act to preserve the integrity and control of its docket. *See Span–Eng Assocs. v. Weidner*, 771 F.2d 464, 470 (10th Cir.1985). Moreover, "[i]t is particularly important for a district utilizing a random selection process to jealously guard the integrity of the system from potential abuse which attempts to circumvent the process." *Murray*, 1992 WL 75212, 1992 U.S. Dist. Lexis 4057(*citing Knox v. McGinnis*, 1990 WL 103277, *1, 1990 U.S. Dist. Lexis 8711, *2 (N.D.Ill. July 12, 1990)). By engaging in judge-shopping, parties contravene the very purpose of random assignment, which is to "prevent judge-shopping by any party, thereby enhancing public confidence in the assign-

ment process." *United States v. Mavroules,* 798 F.Supp. 61 (D.Mass.1992).

■ Policy considerations and judicial economy also weigh heavily against condoning a party's judge-shopping practices. In addressing this issue, the District Court of Kansas expressed serious and well-reasoned concerns regarding the unnecessary expenditure of judicial resources:

> Judicial economy is well-served; with over 750 cases filed in this court in the past year, this court is unduly burdened by a claim that could more efficiently be heard in a case already pending in Judge Crow's court. **This district's docket would become clogged and suffer virtual incapacitation if all litigants were allowed to bring a new cause of action every time a motion to amend was denied or partial summary judgment was granted.** Furthermore, to allow the approach plaintiffs advocate would grant this court's seal of approval to a practice of flagrant judge-shopping. While the court is aware that a certain amount of judge-shopping occurs each time a litigant decides whether to file a case in Wichita, Topeka, or Kansas City, **the court cannot condone plaintiffs' practice of running to a different city within the district and filing a new case every time a judge in a prior action makes a ruling adverse to that litigant's position.** The court cannot be made a party to what is in effect an appeal from Judge Crow's ruling in the 1985 action.

*Oxbow Energy, Inc. v. Koch Industries, Inc.,* 686 F.Supp. 278, 282 (D.Kan.1988)(emphasis added).

■ In the case at bar, the timing of Plaintiffs' actions lead us to the conclusion that they engaged in judge-shopping. Faced with the denial of their request for a preliminary injunction, as well as the denial of reconsideration on that regard, Plain-

tiffs immediately, and tactically, dismissed the first action and refiled their complaint as well as their motion for preliminary injunction, in hopes that the random assigning process would result in a more favorable judge. **We cannot and will not condone this practice.** Accordingly, we turn the discussion to what would be the appropriate sanction(s).

Defendants have requested that the case be transferred to Judge Carmen Consuelo Cerezo. Local Rule 3.2(b) authorizes the transfer of cases "[i]n the interest of justice . . . or to further the efficient performance of the business of the Court." In keeping with the above-referenced case law, we find that transfer of the case to Judge Carmen Consuelo Cerezo who first handled the case and is familiar with it is the appropriate course of action to follow at this point. Such transfer will prevent Plaintiffs from reaping benefits from their ill-conceived tactics. However, this does not mean that we may not further sanction Plaintiffs.

> If there is sufficiently strong evidence that a party and its attorney conspired to interfere wrongfully with the administration of justice, disqualification might well be appropriate even if the conspiracy never came to fruition. A court's inherent power to disqualify an attorney or otherwise sanction a party or attorney is rooted in concern for the integrity of the judiciary and the public's perception thereof. It does not further those ends to punish only successful attempts at tampering with the judicial process while overlooking unsuccessful ones.

*In re: Bellsouth Corp.,* 334 F.3d 941, 951 (11th Cir.2003).

Accordingly, Plaintiffs' attorneys are sanctioned in the amount of $ 1,000.00 each. Counsel must submit proof of payment to the Clerk's Office by October 31,

2004. Failure to comply with this order will result in the imposition of further sanctions. In addition, the parties are forewarned that any future similar conduct will be severely sanctioned.

**Conclusion**

For the reasons set herein, Defendants' motion to transfer is **GRANTED** and the above-captioned matter is hereby **TRANSFERRED** to U.S. District Judge Carmen Consuelo Cerezo. The Court shall receive from Judge Carmen Consuelo Cerezo another case in exchange.

**SO ORDERED.**