**DORAL BANK, Plaintiff,**

v.

**CITIBANK N.A., Defendant.**

**Civil No. 14–1196 (GAG).**

United States District Court, D. Puerto Rico.

Signed Aug. 4, 2014.

2, 2014, Citibank replied to Doral's opposition. (Docket No. 23.) After reviewing the parties' submissions and pertinent law, the court **DENIES** Citibank's motion to transfer venue.

## I. Factual and Procedural Background

By virtue of a Loan Agreement dated October 16, 2007, RCPR Lessee L.P. S.E. ("RCPR") borrowed $200,000,000 ("Loan") from five banks, including Citibank and Doral. (Docket No. 1 ¶ 5.) The Loan was used to refinance existing debt secured by the Ritz Carlton Hotel, located in San Juan, Puerto Rico. The aforementioned Loan Agreement governs the terms under which the lenders loaned the funds. It also establishes the borrower and lenders' rights and obligations in connection with said Loan. (Docket No. 1 ¶ 6.)

On August 6, 2013, Doral filed a complaint against BDCM Opportunity Fund III, L.P., ("BDCM Opp. Fund"), Black Diamond Capital Holdings, LLC, Black Diamond Commercial Finance, LLC (collectively "Black Diamond"), and Citibank in Connecticut state court. Said complaint was subsequently removed to the United States District Court for the District of Connecticut. Doral argued that Citibank sold 100% of its interest and title in the Loan to BDCM Opp. Fund, a private equity fund affiliated with or part of Black Diamond Capital Management LLC (together with "Black Diamond" the "Black Diamond Entities"), in breach of the Loan Agreement. Doral sought a declaratory judgment and damages, alleging in essence that the Black Diamond Entities engaged in practices which violated the Connecticut Unfair Trade Practices Act ("CUTPA") and breached fiduciary duties owed to Doral. (Docket No. 10–2.) After various filings and a hearing, on January 21, 2014, Doral filed a notice of voluntary dismissal in the Connecticut federal court. (Docket

Brett D. Anders, PHV Daniel J. Flanigan, Robert J. Edwards, Simon I. Allentuch, Ricardo Jose Rubio–Cuevas, Harold D. Vicente–Gonzalez, for Plaintiff.

Jose Luis Barrios–Ramos, for Defendant.

David W.T. Daniels, Maria E. Lapetina, Pedro Santiago–Rivera, for Intervenor

### OPINION AND ORDER

GUSTAVO A. GELPI, District Judge.

On April 30, 2014, Citibank, N.A., ("Citibank") filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Connecticut (Docket No. 10.) Doral Bank ("Doral") opposed said request on May 21, 2014. (Docket No. 18.) On June

No. 10 at 11.) On February 11, 2014, the Connecticut federal court granted Doral's request and denied Black Diamond's objection thereto.

Subsequently, on March 11, 2014, Doral filed before this federal court an action against Citibank alleging that it entered into a Side Agreement with the Black Diamond Entities, whereby it sold all of its rights, interests, and obligations in and under the Loan in violation of and inconsistent with the Loan Agreement. (Docket No. 1.) Doral argues that the Side Agreement's terms have triggered intentional acts of misconduct designed to harm Doral, RCPR, and their collateral. (Docket No. 1.) Thus, Doral seeks declaratory relief and claims breach of contract, violation of the covenant of good faith and fair dealing, and breach of fiduciary duty by Citibank.

## II. Discussion

■■■ Citibank moves the court to transfer the present case to the Connecticut federal court pursuant to 28 U.S.C. § 1404(a). It argues that said court is a proper forum to adjudge this action and that Doral is judge shopping because it voluntarily dismissed the Connecticut federal action and immediately filed a "restyled" version before this court seeking a "more sympathetic ear." (*See* Docket No. 10 at 14.) Doral denies these allegations and calls to our attention the existence of a forum-selection clause in the Loan Agreement, in which all parties agreed that Puerto Rico was the proper venue for any action arising under the Loan Agreement, such as this one. (Docket No. 18 at 5.) On June 2, 2014, Citibank responded to Doral's opposition, reiterating its previous arguments.

A typical motion to transfer venue is analyzed under § 1404(a) and it presupposes that the action before the court has been brought in a proper venue. 28 U.S.C. § 1404. "Under § 1404(a), a district court may transfer any civil action to any other district where it may have been brought [or to any other district or division to which all the parties have consented,] for the convenience of the parties and witnesses, in the interest of justice." *Coady v. Ashcraft & Gerel,* 223 F.3d 1, 11 (1st Cir.2000). When considering a motion to transfer venue pursuant to § 1404(a), courts must consider several factors such as the convenience of the parties and witnesses, the availability of documents and other sources of proof, the possibility of consolidation, and the order in which the district court obtained jurisdiction, as well as the interest of justice and judicial economy. *See Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc.,* 56 F.Supp.2d 134, 141 (D.Mass.1999); *Coady,* 223 F.3d at 11. "The idea behind § 1404(a) is that where a civil action to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). However, this transfer power, is expressly limited by the final clause of § 1404(a), which restricts transfer to the federal districts in which the action might have been brought. *Id.*

Citibank "does not dispute that Puerto Rico is a generally convenient forum for Doral and Citibank . . . ." (Docket No. 10 at 20.) Though Citibank recognizes that Puerto Rico is a proper venue, it nevertheless argues that Connecticut is also a proper one. However, aside from the judge shopping argument and alleged convenience of non-party witnesses, Citibank fails to show why Connecticut is the most convenient forum for the parties. It mainly

argues that Connecticut is a convenient forum as to the non-party witnesses because the "Black Diamond Entities are central to this litigation, and their employees will be necessary witnesses...." (Docket No. 10 at 20.) Since the Black Diamond Entities are headquartered in Greenwich, Connecticut, Citibank posits that transfer to the Connecticut federal court is appropriate.

Conversely, Doral claims that "[m]ost of the necessary witnesses are in the District of Puerto Rico which is why the parties agreed that Puerto Rico was the proper forum for disputes under the Loan Agreement." (Docket No. 18 at 12.) Since the discovery process has not yet begun, this court cannot speculate as to where the witnesses may be from; however, it can safely assume that based on where the Loan Agreement was entered into, and the location of the collateral, a number of the witnesses will most likely be from Puerto Rico.

In *Atari v. UPS, Inc.*, 211 F.Supp.2d 360, 362 (D.Mass.2002), the court noted that the convenience of the witnesses is often the deciding factor in resolving a motion to transfer. Nonetheless, "[t]he First Circuit has denied transfer of venue based on non-party witnesses where video-taped deposition testimony is available." *In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 21, 50 (1st Cir.2013). So, to accommodate those individuals in Connecticut or elsewhere which Citibank decides to call as witnesses, like the Black Diamond Entities employees, and for which travel to Puerto Rico may not be feasible, *In re Neurontin Mktg.* provides an alternative option, namely, video depositions.

For the most part, Citibank avers that Doral's voluntary withdrawal of the removed Connecticut action and later filing of the "same" claim in the District of Puerto Rico constitutes judge shopping.[1] Citibank argues that after receiving "an unfavorable assessment" from Judge Underhill, the Connecticut federal court judge, Doral withdrew its claims. It further contends that, instead of amending the pleadings, Doral "restyled" the Connecticut complaint "to try its luck before a different court." (*See* Docket No. 10.) Citibank posits that judge shopping is an extraordinary circumstance that merits departure from enforcing the forum-selection clause. Further, Citibank asserts that Doral should not be permitted to abuse the judicial process by withdrawing and refiling its claims in another court simply because it received an unfavorable assessment from the judge on a prior filling.

Pursuant to Fed.R.Civ.P. 41(a)(1)(A)(i), a plaintiff can voluntarily dismiss his claim without prejudice, and file it on a future occasion.[2] Doral's voluntary withdrawal of the Connecticut action and proximate filing of the instant action is permissible under Fed.R.Civ.P. 41. This is moreover evident since the Connecticut federal court granted said dismissal.

More so, Doral filed the Connecticut action against the Black Diamond Entities, all third parties to the Loan Agreement,

---

1. In *Vaquería Tres Monjitas, Inc. v. Rivera Cubano*, judge shopping is described as "a concern when a litigant discontinues a fray, only to start over again on another day." 341 F.Supp.2d 69, 71 (D.P.R.2004). It is an attempt to manipulate the random case assignment process, and disrupts the proper functioning of the judicial system. *Id.*

2. A court order is not needed to dismiss the claim, as long as (i) a notice of dismissal is filed before either party, serves an answer or a motion for summary judgment; or (ii) the plaintiff files a stipulation of dismissal that is signed by all parties. FED.R.CIV.P. 41.

and Citibank as a nominal defendant. Here, the original parties are Doral and Citibank, both signatories to the Loan Agreement. Above all, in this case, the parties contractually agreed that the Commonwealth's state and federal courts are the proper venue to litigate disputes such as the instant complaint. Consequently, Doral's actions do not *per se* constitute judge shopping. Furthermore, as per the forum-selection clause's language, all parties, including Citibank, agreed to the Commonwealth fora and "irrevocably waived" any objection thereto. (Docket No. 10–5 at 124–125.)

As discussed above, in the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion must "decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." § 1404(a)." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas,* —— U.S. ——, 134 S.Ct. 568, 574, 187 L.Ed.2d 487 (2013). But when the parties' contract contains a valid forum-selection clause, that clause "represents [their] agreement as to the most proper forum." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *see Atl. Marine,* 134 S.Ct. at 574. It should be "given controlling weight in all but the most exceptional cases." *Id.* at 33, 108 S.Ct. 2239 (Kennedy, J., concurring). The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* (Kennedy, J., concurring).

 When evaluating a transfer request, the First Circuit considers the presence of a forum-selection clause a "significant factor". *Astro–Med, Inc. v. Nihon Kohden Am., Inc.,* 591 F.3d 1, 12 (1st Cir.2009). "[B]ecause the overarching

consideration under § 1404(a) is whether a transfer would promote "the interest of justice," a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine,* 134 S.Ct. at 574. The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways. *Id.* at 581. First, Citibank's choice of forum (Connecticut) merits no weight, and Citibank, as the party defying the forum-selection clause, has the burden of establishing that transfer to a different forum than that which the parties "bargained for" (Puerto Rico) is warranted. *See id.* "Second, the court should not consider the parties' private interests aside from those embodied in the forum-selection clause; it may consider only public interests. Because public-interest factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* Third, when a party bound by a forum-selection clause flouts its contractual obligation and requests transfer to a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules. *Id.* at 574. *See Van Dusen,* 376 U.S. at 639, 84 S.Ct. 805.

 Here, Doral filed the instant action in the forum the parties had agreed to pursuant to the forum-selection clause. Citibank wants to defy the agreed-upon forum and transfer the suit to a different forum without meeting its heavy burden of proof that there are extraordinary circumstances which merit departure from the forum-selection clause. "Under federal common law, forum-selection clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances. The party resisting enforcement of the clause bears a heavy bur-

den of proof to show unreasonableness." *Davis Media Grp., Inc. v. Best W. Int'l, Inc.*, 302 F.Supp.2d 464, 469–70 (D.Md. 2004). There is a strong presumption in favor of plaintiff's choice of forum. Therefore, when a defendant asks a court to disregard a forum selection clause, he bears a heavy burden. *In re Mercurio*, 402 F.3d 62, 64 (1st Cir.2005).

Section 10.3 of the Loan Agreement contains the forum-selection clause which reads as follows:

> (b): With respect to any claim or action arising hereunder or under this agreement, the notes, or the other loan documents, borrower and lenders each (A) Irrevocably submits to the jurisdiction of the courts of the Commonwealth of Puerto Rico and the United States District Court located in the District of Puerto Rico, and appellate courts from any thereof, and (B) Irrevocably waives any objection which it may have at any time to the laying on venue of any suit, action or proceeding arising out of or relating to this agreement, the notes or the other loan documents brought in any such court, irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. Nothing in this agreement, the notes or the other loan documents instrument will be deemed to preclude lenders from bringing an action or proceeding with respect hereto in any other jurisdiction.

(Docket No. 10–5 at 124–125.) The forum-selection clause agreed upon by the parties can be broken into two important subparts. Section 10.3(b)(A) irrevocably establishes the choice of forum to be the state and federal courts located in the Commonwealth of Puerto Rico. Under Section 10.3(b)(B) the parties irrevocably waived the right to object the chosen venue, and further waived any objection they may have to that elected venue for any suit, action, or proceeding relating to the Loan Agreement.

The language of the Loan Agreement's forum selection-clause is further clear. It plainly reads that all parties unequivocally agreed to submit to the jurisdiction of the state and federal courts of the Commonwealth of Puerto Rico for any actions that arise under the Loan Agreement and unequivocally waived any objection thereto. "[W]hen the parties' contract contains a valid forum-selection clause, that clause represents [their] agreement as to the most proper forum." *Atl. Marine*, 134 S.Ct. at 574. Though Citibank agreed that the Commonwealth state and federal courts are the proper forum, it now attempts to reject the plain language of the forum-selection clause and ignore the parties' intent and expectations.

██ Further, Citibank fails to attack the validity of the forum-selection clause. A forum-selection clause is almost always enforceable absent fraud or clear inequity. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).[3] The Loan Agreement entered into by the parties, which governs their relationship, was drafted and entered into in Puerto Rico pursuant to Puerto Rico law and involved collateral located in Puerto Rico. (Docket No. 18 at 4.) Some of the

---

**3.** A series of guidelines have been established to determine whether a forum-selection clause is applicable: (1) that the selected forum is unreasonable or unjust; (2) that hearing the case in said forum would constitute a clear and patent inequity; or it would be unreasonable or unjust; (3) that the clause was negotiated under fraud or deceit; (4) that the enforcement of said clause would go against the states public policy. *M/S Bremen*, 407 U.S. at 15, 92 S.Ct. 1907. *See Unisys Puerto Rico, Inc. v. Ramallo Bros. Printing, Inc.*, 128 D.P.R. 842 (1991).

relevant events related to this suit occurred in Puerto Rico, so the forum selected by the parties is just. Both parties entered into this contract voluntarily and knowingly. There is no evidence that the clause was negotiated under fraud or deceit and enforcing the clause does not go against public policy. More importantly, Citibank does not contend otherwise. By the same token,

> [a]t the time these contracts [forum-selection clauses] are entered into, the parties routinely, voluntarily, and knowingly agree to litigate and/or be bound by the decision of the forum located in distant locations. Thus, something considerably more than the mere inconvenience of traveling to litigate in a different, even far away foreign jurisdiction, is required to overcome a contractual agreement to do so.

*In re Mercurio,* 402 F.3d at 64. At this point, it becomes clear that the forum-selection clause that designates Puerto Rico as the proper forum for disputes such as the one at bar is valid and enforceable. While Citibank does not contest the existence and validity of the forum-selection clause, it argues that there are 'extraordinary circumstances' that warrant departure from said clause; thus, transfer to Connecticut is appropriate. In support thereof, Citibank posits that: "Judge Shopping, like inequitable conduct and bad faith, constitutes extraordinary circumstances warranting departure from enforcing a forum-selection clause or honoring a plaintiff's choice of forum." (Docket No. 10 at 15.)

To uphold its judge shopping allegation, Citibank cites a number of cases. *See, e.g., Vaqueria Tres Monjitas, supra,* at 71; *Johnson v. New York Life Ins. Co.,* No. 12–11026, 2013 WL 1003432 (D.Mass. Mar. 14, 2013); *D & L Distribution, LLC v. Agxplore Int'l, LLC,* 959 F.Supp.2d 757, 762 (E.D.Pa.2013). However, the factual scenarios of such cases are substantially different from the facts of this case. For example, in *Vaqueria Tres Monjitas,* the plaintiff's request for a preliminary injunction, as well as its reconsideration request, were denied. An hour after voluntarily dismissing the first complaint, plaintiff filed an identical complaint *in the same district* hoping to be assigned a more favorable judge. The defendants moved to transfer the case back to its initially-assigned judge, arguing that the plaintiff's action attempted to manipulate the court's random assignment process. The court granted the transfer back to the original judge, as it was a clear example of judge shopping. *Vaqueria Tres Monjitas, supra,* at 71. *Vaqueria Tres Monjitas* can be distinguished from the case at bar because it dealt with an intra-district transfer where plaintiff tested its luck with the same claims but with a different judge from the same district bench to "escape" an unfavorable assessment. More so, the case did not involve a forum-selection clause which controlled the agreed-upon forum.

In *Johnson, supra,* the court granted defendant's motion to transfer because the plaintiff had filed the same claim in two separate jurisdictions. *Johnson* can also be distinguished from the instant case since the transfer to the District of New York was warranted because a class action alleging the same claims was first-filed and remained pending in said district. Also, just as in *Vaqueria Tres Monjitas,* the action did not involve a valid forum-selection clause.

*D & L Distribution* involved a trademark infringement lawsuit. As in *Johnson,* the defendant filed a motion to transfer the claim to Missouri, where a suit that involved the same subject-matter was pending. The Court granted the transfer because the subject-matter of the actions was sufficiently identical under the first-filed rule and the balance of the factors

favored transfer. Again, *D & L Distribution* did not involve a forum-selection clause or a compelling circumstance which precluded transfer, and the balancing test favored the transfer in the interest of justice. That said, Citibank's cited cases miss the mark.

The Loan Agreement that governs the parties' relationship includes a valid forum-selection clause "bargained for by the parties" and which "represents the parties agreement as to the most proper forum." *Stewart Org., Inc.*, 487 U.S. at 33, 108 S.Ct. 2239; *Atl. Marine*, 134 S.Ct. at 574. A valid forum-selection clause is given controlling weight in all cases, except in extraordinary circumstances. *Id.* Without an "extraordinary circumstance" that merits a transfer to Connecticut and evidence deeming the forum-selection clause unenforceable, the District of Puerto Rico is the most proper forum for the instant claim. Citibank, as the party resisting the enforcement of the forum-selection clause, failed to meet its heavy burden of showing there are "extraordinary circumstances" present that warrant a transfer of this case to the Connecticut federal court, a forum different than that which the parties "bargained for." Absent this showing, and provided that forum-selection clauses are *prima facie* valid unless shown otherwise, the forum-selection clause is controlling and shall be enforced to protect the parties' "legitimate expectations" and further "vital interests of the justice system." *Atl. Marine*, 134 S.Ct. at 574.

## III. Conclusion

For the foregoing reasons, the court **DENIES** Citibank's motion to transfer venue at Docket No. 10.

**SO ORDERED.**