**AFUNDAY CHARTERS, INC., Plaintiff,**

v.

**SPENCER YACHTS, INC., et al., Defendants.**

**CIVIL NO. 16–3141 (GAG)**

United States District Court, D. Puerto Rico.

Signed 08/02/2017

Paul E. Calvesbert–Borgos, Calvesbert Law Offices PSC, Eduardo R. Jenks–Carballeira, Guaynabo, PR, Michael T. Moore, Lars Altman, Moore & Co., P.A., Coral Gables, FL, for Plaintiff.

Alexander Selarnick, David Y. Loh, New York, NY, Manolo T. Rodriguez–Bird, Jimenez, Graffam & Lausell, Alberto J. Castaner–Padro, III, Castaner Law Offices P.S.C., San Juan, PR, James W. Stroup, Stroup & Martin, P.A., Fort Lauderdale, FL, for Defendants.

## OPINION AND ORDER

GUSTAVO A. GELPI, UNITED STATES DISTRICT JUDGE

Afunday Charters, Inc. ("Afunday Charters" or "Plaintiff") filed the present action against Spencer Yachts, Inc. ("Spencer Yachts"), Joseph Daniel Spencer ("Daniel Spencer"),[1] (collectively "Defendants") seeking redress for injuries suffered as a result of the total loss of a Spencer 74' Custom Sport Fish Convertible named "AFUNDAY", a fiberglass sport fishing yacht ("Vessel"), during the course of the Vessel's transfer from North Carolina to Trinidad and Tobago. (Docket No. 1.) Defendants moved to dismiss the Complaint for lack of personal jurisdiction and *forum non conveniens.* (See Docket Nos. 19, 20.)

After considering the parties' filings and applicable law, the Court **DENIES** Defendants' Motion to Dismiss.

### I. Relevant Factual & Procedural Background

Plaintiff is a Delaware corporation that was the owner of the Vessel. (Docket No. 1 ¶ 1). Co-defendant Spencer Yachts is a North Carolina corporation that specializes in custom boat building and marine services. Id. ¶ 2. Co-defendant Daniel Spencer is an employee of Spencer Yachts who was

---

1. "ABC Insurance Company" was included as a defendant as Spencer Yachts and Daniel Spencer's liability insurer.

acting as an agent of Spencer Yachts at the time of the incident. Id. ¶ 3.

On January 1, 2014, Anthony Norman Sabga ("Norman Sabga"), a beneficial owner of Afunday Charters, entered into a Contract Price Purchase Agreement ("Purchase Agreement") with Spencer Yachts in his individual capacity. (Docket No. 1 ¶ 7; 24 at 1.) Plaintiff is not a party in the Purchase Agreement. (Docket No. 24 at 1.) Under this Purchase Agreement, Spencer Yachts would construct and sell the Vessel by July 2015. (Docket No. 1 ¶¶ 7–8.) Because of multiple delays by Spencer Yachts, the Vessel was available for delivery in December 2015. Id. ¶ 9.

Spencer Yachts later agreed to have Daniel Spencer serve as captain of the Vessel from North Carolina, the place of its construction, to Trinidad and Tobago, the country of Norman Sabga. Id. ¶ 10. Chris Blanchard, a Spencer Yachts employee, served as engineer/mechanic during the voyage. (Docket No. 24 at 2.) The Vessel departed from North Carolina on December 30, 2016. (Docket No. 1 ¶ 11.) On January 11, 2016, Daniel Spencer changed course for Fajardo, Puerto Rico, instead of going to the planned intermediate destination of St. Maarten. Id. ¶ 16. Daniel Spencer and Chris Blanchard decided to travel to Fajardo, Puerto Rico for two reasons: to deliver air conditioning parts to the captain of another boat built by Spencer Yachts, and to have a company called Island Marine, Inc. ("Island Marine") repair the Vessel's tie bar. (Docket No. 24 at 3–4.)

On January 12, 2016, the Vessel docked in Fajardo, Puerto Rico at the Puerto Del Rey Marina. (Docket No. 1 ¶ 17.) While in Puerto Rico, Daniel Spencer and/or Chris Blanchard delivered parts to a captain of another yacht built by Spencer Yachts. Id. ¶ 18. Chris Blanchard also took the Vessel's tie bar rudder to Island Marine, a Puerto Rican business, for repair. Id. ¶ 19.

At approximately 5:00 AM on January 14, 2016, while it was still dark, Daniel Spencer captained the Vessel out of the Puerto Del Rey Marina and into open waters. Id. ¶ 20. Daniel Spencer did so to arrive in St. Lucia before nightfall. Id. Daniel Spencer, who was not familiar with Puerto Rico's coastal waters, then crashed the Vessel into the "Roca Lavandera Del Oeste," a rock shoal that was clearly marked on the Vessel's GPS unit. Id. ¶¶ 21, 24, 26–27. The collision fractured the Vessel's hull, causing it to begin taking water. Id. ¶ 30. Shortly after Daniel Spencer called the U.S. Coast Guard, the Puerto Rican Joint Forces of Rapid Action ("marine police") arrived on scene, and saved the crew of the Vessel. (Docket No. 24 at 5.) During this time, East Towing and Salvage, Inc. ("SeaTow Puerto Rico") provided salvage services on the Vessel and towed it. Id.

Plaintiff filed the present suit on December 13, 2016 to recover for substantial damages allegedly caused by Spencer Yachts' and Daniel Spencer's negligence. (Docket No. 24 at 5.) Defendants then filed a Motion to Dismiss Afunday Charter's Complaint based on a lack of personal jurisdiction and *forum non conveniens*. (Docket No. 19.) They contend the Court may not exercise personal jurisdiction over Spencer Yachts because Spencer Yachts does not have the requisite contacts to satisfy a constitutional due process analysis. Id. at 1–2. Defendants assert that the facts of the case have no relationship to Puerto Rico because neither the witnesses nor the parties reside there, and no relevant evidence is located there. Id. at 2. Defendants also argue that the Purchase Agreement contained a forum selection clause which mandates that any legal claims arising out of the agreement shall be heard in North Carolina. Id.

Plaintiff opposed, arguing that Spencer Yachts' contacts with Puerto Rico are suf-

ficient to subject Spencer Yachts to this Court's jurisdiction. (Docket No. 24 at 7.) Plaintiff contends that the claim underlying the litigation directly arises out of Spencer Yachts' forum-state activities, Spencer Yachts purposefully availed itself of the privilege of conducting activities in Puerto Rico, and it was reasonably foreseeable that Defendants would be hailed into Puerto Rican courts. Id. at 7, 9. Plaintiff also asserts that the exercise of jurisdiction is reasonable under Frist Circuit jurisprudence. Id. at 12. Furthermore, Plaintiff argues that the forum selection clause contained in the Purchase Agreement does not bind Plaintiff because not only is Plaintiff not a party to this contract, the contract was never assigned to Plaintiff. Id. at 15.

Defendants replied, reiterating that Plaintiff is bound by the forum selection clause and that exclusive jurisdiction pertains to Dare County, North Carolina. (Docket No. 31 at 2–3.) Moreover, Defendants assert that the Purchase Agreement was intended to apply to all claims growing out of the parties' relationship, not merely those related to the construction of the Vessel. Id. at 7.

Plaintiff filed a sur-reply, arguing that the movement of the Vessel from North Carolina to Trinidad and Tobago, with a stop in Puerto Rico, is part of a separate agreement that was not memorialized in writing and to which the forum selection clause would not apply. (Docket No. 37, at 3–4.)

## II. Standard of Review

In considering a motion to dismiss, the court accepts the complaint's alleged facts as true and draws all reasonable inferences in favor of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955). Instead, a court must determine whether the complaint, construed in the proper light, "alleges facts sufficient to make out a cognizable claim." Carroll v. Xerox Corp., 294 F.3d 231, 241 (1st Cir. 2002). The court may also draw from undisputed court documents generated in proceedings referenced in the complaint. See Prisma Zona Exploratoria de P.R. v. Calderón, 310 F.3d 1, 2 (1st Cir. 2002).

Federal Rule of Civil Procedure 12(b)(2) is the proper procedural mechanism through which a defendant may request dismissal of an action asserted against him for lack of personal jurisdiction. A district court may rule on a 12(b)(2) motion without holding an evidentiary hearing by employing a "prima facie standard". See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).

■ To establish personal jurisdiction, the plaintiff must plead enough facts to support a prima facie case consistent with Puerto Rico's long-arm statute and the U.S. Constitution's Due Process Clause. See Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997). Puerto Rico's long-arm statute is "coextensive with the reach of the Due Process Clause." Carreras v. PMG Collins, LLC., 660 F.3d 549, 552 (1st Cir. 2011). The court thus proceeds directly to the constitutional analysis. See Portugues v. Venable LLP, 497 F.Supp.2d 295, 298 (D.P.R. 2007).

## III. Discussion

### A. Personal Jurisdiction

■ There are two types of personal jurisdiction that conform with due process:

general and specific. Id. The constitutional analysis hinges on the existence of "minimum contacts" between the nonresident defendant and the forum. See Negron–Torres v. Verizon Comm., Inc., 478 F.3d 19, 24 (1st Cir. 2007). General jurisdiction is established when the defendant is "engaged in continuous and systematic activity" in the forum, regardless of whether it is related to the underlying claim. See United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Specific jurisdiction, on the other hand, is established when the cause of action arises directly out of, or relates to, the defendant's forum-based contacts. Id. at 1088–89.

In order to determine whether the plaintiff has sufficient facts to establish specific jurisdiction, the First Circuit applies the following three-part test:

> First, an inquiring court must ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum. Second, the court must ask whether those contacts constitute purposeful availment of the benefits and protections afforded by the forum's laws. Third, if the proponent's case clears the first two hurdles, the court then must analyze the overall reasonableness in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction.

Portugues, 497 F.Supp.2d at 298 (citing Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999)). The Court thus proceeds to analyze whether the complaint satisfies each of these three factors.

### 1. Relatedness

Before authorizing jurisdiction in Puerto Rico, this Court must first resolve whether the claim underlying the litigation directly relates to or arises out of the defendant's forum-state contacts. Portugues, 497 F.Supp.2d at 298 (citation omitted). Plaintiff argues that Spencer Yachts' contacts with Puerto Rico were sufficient to subject it to this Court's jurisdiction because the litigation directly arises out of Spencer Yachts' in-state contacts. (Docket No. 24 at 7–9.) Defendants have not attempted to dispute Plaintiff's argument, stating that "if Plaintiff's allegations are fully credited, the damage to the Vessel arose out of Spencer Yachts' forum-state activities." (Docket No. 19 at 7.) As a result, this Court concludes that the claim underlying the litigation directly arises out of Spencer Yachts' forum-state contacts.

### 2. Purposeful Availment

The next step in the tripartite analysis for specific jurisdiction is to determine whether the defendant's contacts constitute a purposeful availment of the privilege of conducting activities in the forum, thereby "invoking the benefits and protections of [the forum's] laws." Portugues, 497 F.Supp.2d at 299 (citing Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). The purposeful availment requirement guarantees that a defendant will not be subject to litigation in a forum based on "random" contacts or the "unilateral activity of another party or a third person." See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Accordingly, the defendant's contacts with the forum-state must be voluntary and create reasonable foreseeability that the defendant will be subject to a lawsuit there. Id. at 476, 105 S.Ct. 2174.

The voluntary aspect of the purposeful availment prong requires that the defendant's efforts are "purposefully directed" toward residents of another State. Burger King Corp., 471 U.S. at 475, 105 S.Ct. 2174. An absence of physical contacts

in the forum state does not defeat personal jurisdiction there. Id. Here, Plaintiff contends that Spencer Yachts made a series of unilateral decisions that satisfy the voluntary aspect, like traveling to Puerto Rico, repairing the Vessel with a Puerto Rican business, and crashing into the "Roca Lavandera." (Docket No. 24 at 10.) Plaintiff also notes that Spencer Yachts traveled to Puerto Rico partly to "satisfy [their] own business aims" by delivering parts to a Spencer Yachts boat. Id. Defendants counter that Spencer Yachts does not have any physical contacts in the forum, like property, bank accounts, or shareholders, among others, to sustain a purposeful availment argument. (Docket No. 19 at 9–10.) Despite Defendants' attempt to deny jurisdiction, it is clear that Defendants solicited business from Puerto Rican businesses and decided to travel to the forum. In doing so, they reached out to said jurisdiction, thus satisfying the voluntariness requirement.

■ In terms of foreseeability, a defendant must have "fair warning" that his actions may subject him to jurisdiction in a particular forum. See Portugues, 497 F.Supp.2d at 299. In this case, because Spencer Yachts' actions were directly aimed towards Puerto Rico, it should have known that it would be subject to litigation in Puerto Rico. Spencer Yachts not only engaged in business for its own financial gain while in Puerto Rico, it was also involved in an accident that caused a multi-million dollar loss and mobilized the marine unit of the Puerto Rico Police Department for rescue. (Docket No. 24 at 11.) Thus, the foreseeability requirement is also met.

Spencer Yachts voluntarily reached out to Puerto Rico to conduct business in the forum. Spencer Yachts also had fair warning regarding the chance of being subjected to personal jurisdiction in Puerto Rico.

Therefore, this Court finds that the purposeful availment prong is met.

### 3. Reasonableness

■ The Court must further determine whether Puerto Rico's exercise of jurisdiction is reasonable according to what the First Circuit has termed the "Gestalt factors". See Portugues, 497 F.Supp.2d at 300 (citing constitutional Ticketmaster–New York, Inc. v. Alioto, 26 F.3d 201, 209 (1st Cir. 1994)). These five factors are:

(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Id.

The first factor, the defendant's burden of appearing, is considered the primary concern in reasonableness analysis. See World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The burden of appearing, however, is "only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Plaintiff asserts that Spencer Yachts, a large company that builds multi-million dollar vessels, is not strapped for resources and thus "is in a better place to litigate in Puerto Rico than most." (Docket No. 24 at 12; see also Pritzker, 42 F.3d at 64 (noting that the need to travel between New York and Puerto Rico does not represent an unusual burden)). Defendant argues that the Purchase Agreement's forum selection clause, which mandates litigation in North Carolina, establishes a "substantial and unreasonable" burden on Spencer Yachts. (Docket No. 19 at 11.) Contrary to Defendants' claim, however, Spencer Yachts'

burden is not so onerous as to make it unreasonable to assert jurisdiction.

 The second factor considers the forum state's interest in adjudicating the dispute. See Portugues, 497 F.Supp.2d at 300. Typically, a forum state has a "demonstrable interest in exercising jurisdiction over a defendant who has caused an injury within the state." Rodriguez v. Dixie S. Indus., Inc., 113 F.Supp.2d 242, 254 (D.P.R. 2000). Here, the injury occurred in Puerto Rico, a fact that weighs heavily in favor of exercising jurisdiction in Puerto Rico.

 The third "Gestalt factor" examines the plaintiff's interest in obtaining convenient and effective relief. See Portugues, 497 F.Supp.2d at 300. Courts must afford plaintiff's choice of forum "a degree of deference in respect to the issue of its own convenience." See Ticketmaster–New York, Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994). While Defendants refer to the Purchase Agreement's forum selection clause to argue against Plaintiff's choice of forum, it does not outweigh the convenience of litigating this lawsuit where the injury actually occurred.

The judicial system's interest in the effective administration of justice also weighs in favor of exercising jurisdiction. See Portugues, 497 F.Supp.2d at 300. Although three key witnesses, Paul Spencer, Daniel Spencer, and Chris Blanchard, all reside in North Carolina, there are other witnesses in Puerto Rico who can attest to Defendants' actions in the forum state. (Docket No. 24 at 14.) Again, evidence regarding the injury is also located in Puerto Rico.

The fifth and final factor considers the common interests of all sovereigns in promoting substantive social policies. See Portugues, 497 F.Supp.2d at 300. Puerto Rico has an interest in maintaining control and exercising authority over people who choose to navigate through its waters.

(Docket No. 24 at 14–15.) North Carolina also has an interest in ensuring that forum selection clauses that require litigating a claim within its borders be enforced. (Docket No. 19 at 13.) This factor favors neither Puerto Rico nor North Carolina, as neither forum can claim that it has a greater interest in promoting substantive social policies. See Portugues, 497 F.Supp.2d at 300.

Taking the five Gestalt factors as a whole, four weigh in Afunday Charters' favor and one favors neither party. Therefore, the reasonableness analysis supports this Court's jurisdiction over Spencer Yachts. See Baskin–Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 41 (1st Cir. 2016).

In sum, the Court has specific jurisdiction over Spencer Yachts because the claim that undergirds the litigation directly arises out of Spencer Yachts' contacts with Puerto Rico. Spencer Yachts purposely availed itself of the benefits and protections of Puerto Rico, and the exercise of jurisdiction is reasonable in accordance with the Gestalt factors.

### 4. Forum Non Conveniens

 The doctrine of *forum non conveniens* stems from the principle "that a court may resist imposition upon its jurisdiction even when its jurisdiction is authorized by the letter of a general venue statute." See Royal Bed & Spring Co., Inc. v. Famossul Industria e Comercio de Moveis Ltda., 906 F.2d 45, 48 (1st Cir. 1990) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The doctrine of *forum non conveniens* is the proper way through which to enforce a forum selection clause pointing to a state or foreign forum. See Atlantic Marine Const. Co. v. U.S. Dist. Ct. for Western Dist. of Tex., —— U.S. ——, 134 S.Ct. 568, 580, 187 L.Ed.2d 487 (2013).

 Save for exceptional cases, valid forum selection clauses are considered con-

trolling without taking the convenience of the parties or various public interest considerations into account. Id. at 581, 134 S.Ct. 568; see also Doral Bank v. Citibank N.A., 32 F.Supp.3d 106, 111 (D.P.R. 2014). The plaintiff thus "bear[s] the burden of showing why the court should not transfer the case to the forum to which the parties agreed." Id. at 582, 134 S.Ct. 568.

■■■ Plaintiff argues that the forum selection clause does not bind Plaintiff because Plaintiff is not a party to the contract. (Docket No. 24 at 16.) Plaintiff further contends that the movement of the Vessel is outside the scope of the Purchase Agreement, and by extension, the forum selection clause, as "final payment signified delivery under the Purchase Agreement." Id. at 18.

Defendants reiterate the mandatory nature of forum selection clauses and instead argue that Plaintiff must show the forum selection clause's unenforceability using the *Bremen* factors. (Docket No. 19 at 13–14; M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 15–18, 92 S.Ct. 1907, 32 L.Ed.2d 513.) Defendants read the Purchase Agreement's forum selection clause broadly, stating that the forum selection clause applies to "any claims, causes of action or legal proceedings arising out of this Agreement." (Docket No. 31 at 6.) Defendants thus not only assert that Plaintiff is bound by the Purchase Agreement, but also that the events giving rise to this lawsuit "arise out of" the agreement. Id. at 7.

■■■ While Defendants are correct in describing the binding nature of forum selection clauses, the fact remains that Plaintiff is not a signatory nor a party to the Purchase Agreement. Although nonparties to a contract can benefit from and be subject to a contract's forum selection clause, this occurs if their conduct is "closely related to the contractual relationship." D.I.P.R. Mfg., Inc. v. Perry Ellis

Int'l, Inc., 472 F.Supp.2d 151, 154 (D.P.R. 2007) (noting that non-party was closely related to party because it benefitted economically from a license agreement). In this case, Plaintiff was not in charge of the Vessel's movement, despite parties allegedly being "on notice that Plaintiff was the ultimate receiver of the Vessel." (Docket No. 31, at 6.) Furthermore, although Defendants claim that Plaintiff is a "third-party beneficiary" of the Purchase Agreement, First Circuit precedent clearly shows that in order to sustain such a conclusion the contract must have mentioned or manifested "an intent to confer specific legal rights upon" Afunday Charters. InterGen N.V. v. Grina, 344 F.3d 134, 147 (1st Cir. 2003).

The Court therefore reject Defendants' request and finds that enforcement of enforce the forum selection clause is not proper. As such, this forum is proper to ventilate Plaintiff's claims.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss at Docket Nos. 19 and 20.

**SO ORDERED.**